HUNT, *ex rel.* SNOW, *v.* BUHRER.

133 107
f150 ¹ 68
133 107
154 590

1. CONSTITUTIONAL LAW—OPERATION OF SCHEDULE TO CONSTITUTION—COUNTY OFFICERS—TERMS OF OFFICE—COMMENCEMENT—WAYNE COUNTY TREASURER.

Section 28 of the schedule of the Constitution, providing that the terms of office of all State and county officers, etc., shall begin on the 1st day of January next succeeding their election, was not a permanent limitation on the power of the legislature, and did not prohibit the enactment of Act No. 294, Local Acts 1895, providing that thereafter the term of office of the treasurer of Wayne county should begin on the 1st day of July next succeeding his election, and continue for the term of two years from such date.

2. SAME—PARTIAL INVALIDITY OF STATUTE.

Conceding the unconstitutionality of the proviso to said act, which undertook to extend the term of the then incumbent of said office for six months (*i. e.*, to July 1, 1897), the entire act was not thereby invalidated, since any vacancy in the office between the terms might be filled by appointment by the board of supervisors, under 1 Comp. Laws, § 2537.

Error to Wayne; Hosmer, Brooke, Mandell, Donovan, Rohnert, and Frazer, JJ.     Submitted April 21, 1903. (Docket No. 156.)    Decided May 1, 1903.

*Quo warranto* by Ormond F. Hunt, prosecuting attorney of Wayne county, on the relation of Frederick F. Snow, against Charles A. Buhrer, to determine the title to the office of treasurer of said county.    From a judgment for respondent, relator brings error.    Affirmed.

*C. K. Latham* and *E. B. Latham* (*John J. Speed*, of counsel), for appellant.

*Corliss, Andrus, Leete & Joslyn*, for appellee.

CARPENTER, J.    This is a proceeding in the nature of a *quo warranto* to determine who is entitled to the office of county treasurer of Wayne county during the six months from January 1 to July 1, 1903.    Relator was elected to that office at the November election in 1902.    Respondent was elected to that office at the November election in 1900. The controversy depends upon the constitutional validity of Act No. 294 of the Local Acts of the Legislature for the year 1895, which reads as follows:

" *The People of the State of Michigan enact*, that hereafter the term of office of the treasurer of the county of Wayne shall begin on the first day of July next succeeding his election, and continue for the term of two years from said first day of July: *Provided*, that the term of the present incumbent of the office shall end on the thirtieth day of June, eighteen hundred ninety-seven."

The judgment of the court below was in favor of respondent, and relator appeals to this court.    He contended in the court below, and contends in this court, that said act is unconstitutional, for two reasons: (1) That its enactment was forbidden by section 28 of the schedule of the Constitution; and (2) that the provision lengthening the term of the incumbent of the office when the act took effect was unconstitutional, and impaired the validity of the whole act.    We will discuss each of these questions.

1. Was the enactment of the law forbidden by section 28 of the schedule? This section reads as follows:

"The terms of office of all State and county officers, of the circuit judges, members of the board of education, and members of the legislature, shall begin on the first day of January next succeeding their election."

If this provision was intended as a permanent limitation of the power of the legislature, the act under consideration was unconstitutional; otherwise it was constitutional. An examination of the decisions of this court throws some light upon the construction to be given to the provisions of the schedule. In *People* v. *Garlock*, 5 Mich. 284, the question before the court for decision was whether the term of office of a circuit judge elected in a newly organized circuit commenced immediately after the election, or on the first of the following January. In deciding that case, the court, through Mr. Justice CHRISTIANCY, said:

"It is admitted that there is nothing in the body of the Constitution itself to postpone the immediate operation of the act, and the commencement of the official terms as soon as the result of the election was officially determined. But section 28 of the schedule provides, 'The terms of all State and county officers, of the circuit judges, members of the board of education, and members of the legislature, shall begin on the first day of January next succeeding their election,' and it is claimed that this applies to the judges and other officers elected under this act.

"Whether this section of the schedule was intended to have any further effect than to provide for the period of transition from the old to the new Constitution, and to put the new Constitution into full operation, it does not become necessary here to decide; though, from the preamble or first clause of the schedule, declaring its purposes and the appropriate office of such schedule, it would seem that its chief object was to provide only for such transition, and to give any of its provisions a permanent and continuing operation, after the transition had been fully accomplished, the intent must be clear and manifest. But, admitting that this section was intended to have permanent effect as a part of the Constitution, still, after a careful examina-

tion of the whole subject, we are satisfied it was intended only to apply to officers elected for the full term, and at the time fixed by the Constitution."

In *People, ex rel. Douvielle,* v. *Manistee Co. Sup'rs,* 40 Mich. 585, the question involved was whether the board of supervisors of Manistee county had a right to reduce the salary of the judge of probate after his election to that office. In the course of the opinion in that case, the court, through Mr. Justice CAMPBELL, said:

" The first ground taken by the relator, that the schedule to the Constitution fixes the rights of the judges not to have their salaries changed (schedule, § 20 [which reads as follows: "The salaries or compensation of all persons holding office under the present Constitution shall continue to be the same as now provided by law, until superseded by their successors elected or appointed under this Constitution; and it shall not be lawful hereafter for the legislature to increase or diminish the compensation of any officer during the term for which he is elected or appointed"]), is, we think, untenable. The schedule was intended to provide for temporary, and not for future and permanent, purposes, and cannot be given a permanent operation in any case where any other interpretation is reasonable."

It is to be observed of this case that, notwithstanding the refusal to give relator relief on the ground that the schedule was permanent, he did receive relief in that case on the ground that the legislature had not delegated to the board of supervisors authority to reduce his salary, and that without such delegated authority the reduction could not be made.

In the case of *Board of Sup'rs of Houghton Co.* v. *Secretary of State,* 92 Mich. 638 (52 N. W. 951, 16 L. R. A. 432), it was decided that the provision in section 22 of the schedule, " each county having a ratio of representation and a fraction over equal to a moiety of said ratio shall be entitled to two representatives, and so on above that number, giving one additional member for each additional ratio," was a permanent limitation upon the power of the legislature. It is apparent from the reading

of that decision that the court was very much influenced by the first part of the section, which reads:

"Every county, except Mackinaw and Chippewa, entitled to a representative in the legislature at the time of the adoption of this Constitution, shall continue to be so entitled under this Constitution."

In my judgment, all these cases are consistent with the principle announced by Judge CAMPBELL, that "the schedule was intended to provide for temporary, and not for future and permanent, purposes, and cannot be given a permanent operation in any case where any other interpretation is reasonable;" and with that announced by Judge CHRISTIANCY, "To give any of its provisions a permanent and continuing operation, the intent must be clear and manifest."

If we look at the declaration preceding the schedule, and at the schedule itself, we reach the same conclusion. The men who framed the Constitution, and the people who adopted it, declared the purpose of the schedule in the following words:

"That no inconvenience may arise from the changes in the Constitution of this State, and in order to carry the same into complete operation."

Under a schedule framed for this purpose, we have a right to believe that the makers of the Constitution would place no permanent limitation upon legislative power without using language which would unmistakably indicate their intent to make it permanent. If we examine in detail the provisions of the schedule, we find that some of them (like those which relate to the time and manner of adopting the Constitution itself) will have performed their entire office before the Constitution goes into effect; some of them (like those relating to the period of service of the legislators and county officers in office when the Constitution was adopted) will have performed their entire office in a limited time; others (like those relating to the common law and the police court of Detroit) will continue in

force until changed by the legislature; while section 22, as heretofore stated, operated as a permanent limitation upon legislative power. If, therefore, the only reasonable construction that the courts can place on the language of section 28 is to hold that it permanently limits the power of the legislature to change the time of the beginning of the terms of county officers, the statute in question is unconstitutional; otherwise it is constitutional. Relator, in support of his claim that the only reasonable construction of said language is that of a permanent limitation on legislative power, advances several arguments, which we will notice.

It is said that section 8 of the schedule, which reads, "All county officers, unless removed by competent authority, shall continue to hold their respective offices until the first day of January in the year one thousand eight hundred and fifty-three," means by inference that the first county officers elected under the Constitution will take office January 1, 1853, and therefore that there was no occasion for section 28 as a *temporary* measure. The makers of the Constitution, and the people who adopted it, might not have desired that the beginning of the terms of office of the first officials elected under the Constitution should be left to inference; and, because they did not choose to so leave it, we are by no means compelled to infer an intent to permanently limit legislative power.

Nor is the word "temporary," in these decisions, used in any narrow sense. It is there used as opposed to "permanent," and not in the limited sense of referring to the immediate time the Constitution went into effect. Assuming that section 8 contains ample provision fixing the time when the first county officers elected under the Constitution shall take office, it certainly does not fix the time when their successors shall take office. The framers of the Constitution would have been short-sighted, indeed, if they had not made some provision to guard against the possible failure of the first legislature elected under this Constitution to enact a law fixing such time. Section 28

of the schedule is such a provision, and a provision which, in our judgment, has the force of an act of the legislature. This care taken to prevent the possibility of a hiatus arising does not require us to hold that the legitimate power to legislate, otherwise existing, is thereby limited.

It is urged that we are bound to declare that the provision fixing the beginning of the terms of the other officials enumerated in this section—particularly those of members of the legislature—is permanent and continuous, and therefore that it should be held that the provision fixing the beginning of the terms of county officers cannot be changed by legislation. Relator's argument that the part of section 28 of the schedule which fixes the beginning of the terms of members of the legislature is permanent may be briefly stated as follows:   The Constitution, read in connection with section 28, clearly requires that each legislature elected at the general biennial election in November shall assemble on the first Wednesday of the following January, and this requirement is not in the Constitution if section 28 is not a permanent provision. It is obvious that there is no force in this argument if the Constitution, without regarding section 28 as a permanent provision, requires each legislature elected in November to assemble on the first Wednesday of the following January. We think it does so require. The Constitution vests the legislative power in the senate and house of representatives. Section 1, art. 4. "Senators shall be elected for two years." Section 2, art. 4. "Representatives shall be chosen for two years." Section 3, art. 4. "The election of senators and representatives, pursuant to the provisions of this Constitution, shall be held on the Tuesday succeeding the first Monday of November in the year one thousand eight hundred and fifty-two, and on the Tuesday succeeding the first Monday of November of every second year thereafter." Section 34, art. 4. "The legislature shall meet at the seat of government on the first Wednesday in February next [this would be February, 1851], and on the first Wednesday in January of every second year

133 MICH.—8.

thereafter, and at no other place or time, unless as provided in this Constitution." Section 33, art. 4. It is consistent with this opinion, and in accordance with our holding, that section 28 of the schedule did fix January 1, 1853, as the beginning of the term of office of the first legislature elected under the Constitution. It follows from this, and from the provisions above quoted, without giving permanent effect to section 28 of the schedule, that the legislature elected in November must thereafter assemble the following January. Otherwise the provision of the Constitution fixing two years as the term of office of its members would be violated.

We should not, in this connection, overlook the circumstance that in the body of the Constitution (see section 2, art. 8) it is expressly provided that the term of office of the secretary of State, superintendent of public instruction, State treasurer, commissioner of the land office, auditor general, and attorney general shall commence on the 1st day of January, 1853, and of every second year thereafter. These are the State officers referred to in the clause "all State and county officers." So far as these State officers are concerned, no principle of construction requires the language of section 28 of the schedule to be given permanent effect.

Nor do we think it follows that because the legislature has not in fact, since the Constitution took effect, changed the time at which these terms of office begin, therefore it has no power to make that change. As well might it be urged that, because the legislature has not repealed or amended many of the Revised Laws of 1846, therefore it has no power to repeal or amend said laws.

It follows from this reasoning that a reasonable construction can be given to section 28 of the schedule without giving its language the force of a permanent limitation upon the power of the legislature to change the time for the terms of county officers to begin, and therefore it is our duty to declare that it is not such a limitation.

2. Does the proviso in the act, extending the term of

the incumbent of the office of county treasurer, elected in November, 1894, for six months after the term for which he was elected, render the whole act unconstitutional? We are so well satisfied with the following reasoning of Judge Hosmer (who prepared the opinion in the circuit court) on this branch of the case that we make it a part of this opinion:

"But it is further urged that the act is void as it attempts to continue a treasurer in office after the expiration of his term. It is unnecessary, in our view of the case, to decide whether this provision is constitutional. It is at least of extremely doubtful-validity. But, admitting its unconstitutionality, we do not regard it as controlling the act and rendering the whole void. It was, at most, only an incidental feature, to facilitate the carrying out of the act. That the whole scheme must necessarily fail because of the invalidity of the proviso, and a vacancy between terms, does not follow. It is quite probable the legislature might have provided for an election to fill this vacancy between terms at the general fall election, had the objection been raised at the time of the passage of the act; but we cannot credit a co-ordinate branch of the government with such a desire to extend the term of the then incumbent that they would not have enacted the law without the proviso. Any one familiar with the business of the treasurer's office at the time of the passage of the act, and with the difficulty of the payment of the taxes of Detroit before the 1st day of January under the then existing circumstances, can readily appreciate the inconvenience of turning over the office to a new official at such a time.

"Vacancies may occur and be filled until an election can take place. The requirement that a vacancy shall be filled by election is in furtherance of the spirit of local self-government, and it does not tend to support counsel's contention that a change in the term of office is inhibited. Section 2537, 1 Comp. Laws 1897, provides, in case of a vacancy or disability, for appointment by the supervisors until the vacancy is filled or the disability removed. This section has stood unchanged since 1846. Rev. Stat. 1846, tit. 3, chap. 14, § 38; 1 Comp. Laws 1857, § 380; 1 Comp. Laws 1871, § 514; 1 How. Stat. § 522. See, also, Rev. Stat. 1838, pt. 1, tit. 3, chap. 3, § 23. Can it be contended

in the case at bar that such an *ad interim* appointment is unconstitutional, or that the supervisors might not have appointed a person to succeed the then incumbent until an election might have been had to fill the vacancy occurring between the terms of office in consequence of the act of the legislature ?"

. It results from this reasoning that the judgment of the court below must be affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. HOOKER, C. J., did not sit.