THE BOARD OF SUPERVISORS OF THE COUNTY OF HOUGHTON v. ROBERT R. BLACKER, SECRETARY OF STATE.

*State   Legislature—Apportionment   of   Representatives—Constitutional law.*

1. Under section 3 of article 4 of the Constitution, the power to divide a county entitled to more than one Representative into representative districts is vested in the board of supervisors of the county, and not in the Legislature.

2. Act No. 109, Laws of 1891, entitled "An act to apportion anew the Representatives among the several counties and districts of this State," in so far as it attempts to divide the county of Houghton by providing that certain townships therein shall constitute a representative district, and that the remaining townships and the counties of Keweenaw and Isle Royal shall constitute a representative district, is unconstitutional and void.

3. Inasmuch as Houghton county was entitled to two Representatives, of one of which she is deprived by the act cited, which provides for the whole number of Representatives authorized by the Constitution, thus preventing the board of supervisors

from dividing the county into two districts, the entire act is unconstitutional and void.

4. The apportionment act of 1885 is unconstitutional, for the reason that some of the counties were given a greater representation than others having a larger population. This objection does not apply to the apportionment act of 1881, under which the notice of election of members of the Legislature must be given, unless in the mean time the Legislature shall be assembled, and the members apportioned anew.

5. The provision of section 3 of article 4 of the Constitution, that each representative district shall consist of convenient and contiguous territory, does not mean "in contact by land," nor prevent uniting the counties of Isle Royal and Keweenaw with any of the counties bordering on the deep waters of the lake in one representative district, if such action is otherwise warranted by the Constitution.

*Mandamus.* Argued June 29, 1892. Granted in part July 28, 1892.

Relator applied for *mandamus* to compel the respondent to give notice of the election of two Representatives from the county of Houghton, regardless of the division of the county by the apportionment act of 1891. The facts are stated in the opinions.

*Allen F. Rees,* Prosecuting Attorney *(T. L. Chadbourne* and *Hubbell & Gray,* of counsel), for relator.

*A. A. Ellis,* Attorney General, for respondent.

Long, J. The Legislature, by Act No. 109, Laws of 1891, apportioned anew the Representatives in the Legislature among the several counties and districts of this State. The number of Representatives was fixed by the first section of the act at 100, in accordance with section 3, art. 4, of the Constitution, agreeably to a ratio of 1 Representative to every 20,938 persons, including civilized persons of Indian descent, not members of any tribe, in each organized county, and 1 Representative to each

county having a fraction more than a moiety of said ratio, and not included therein, until 100 Representatives were assigned. Under the United States census of 1890 it appears that Houghton county had a population of 35,389, or a ratio and a fraction more than a moiety. Under the above apportionment act, however, that county was divided, and the townships of Adams, Chassell, Duncan, Franklin, Hancock, Laird, Portage, Quincy, Schoolcraft, and Torch Lake made to constitute one representative district, while the townships of Calumet and Osceola, of Houghton county, and the whole of the counties of Keweenaw and Isle Royal, were constituted one representative district; that is, two townships of Houghton county were cut off and put into a district with Keweenaw and Isle Royal counties. This is a petition for a *mandamus* to compel the respondent, as Secretary of State, to give notice of the election of two Representatives from the county of Houghton, and disregard the division of the county as made by the Legislature under the act.

It is claimed that the Constitution is violated by this act in two particulars:

1. In dividing the county by putting two of the townships into a representative district outside of it.
2. In refusing to give to the county two Representatives, it having a ratio and a fraction over a moiety.

Section 3, art. 4, of the Constitution, provides:

" The House of Representatives shall consist of not less than 64 nor more than 100 members. Representatives shall be chosen for two years and by single districts. Each representative district shall contain, as nearly as may be, an equal number of inhabitants, exclusive of persons of Indian descent who are not civilized, or are members of any tribe, and shall consist of convenient and contiguous territory; but no township or city shall be divided in the formation of a representative district. When any township or city shall contain a

population which entitles it to more than one Representative, then such township or city shall elect, by general ticket, the number of Representatives to which it is entitled. Each county hereafter organized, with such territory as may be attached thereto, shall be entitled to a separate Representative when it has attained a population equal to a moiety of the ratio of representation. In every county entitled to more than one Representative the board of supervisors shall assemble at such time and place as the Legislature shall prescribe, and divide the same into representative districts equal to the number of Representatives to which such county is entitled by law, and shall cause to be filed in the offices of the Secretary of State and clerk of such county a description of such representative districts, specifying the number of each district, and population thereof, according to the last preceding enumeration."

After the act of 1891 took effect, the board of supervisors of Houghton county assembled, and, acting under what is claimed to be the power of said board conferred by this provision of the Constitution, proceeded to divide the county into two representative districts, it having a ratio, as fixed by the act, and a moiety over, under the last preceding enumeration. A description of such representative district was offered for filing in the office of the Secretary of State. By resolution- of the board of supervisors the county was divided into two districts; the townships of Calumet, Schoolcraft, and Torch Lake, containing a population of 18,758, constituting district No. 1, and the townships of Adams, Chassell, Duncan, Franklin, Hancock, Laird, Osceola, Portage, and Quincy, containing a population of 16,631, constituting district No. 2.

It is expressly provided by the section of the Constitution above set forth that where a county is entitled to more than one Representative the board of supervisors shall assemble and divide the county into representative

92 MICH.—41.

districts.  This power is therefore vested in the board of
supervisors, and not in the Legislature; so that, if the
county of Houghton is entitled to more than one Repre-
sentative, the act of the Legislature, so far as it attempts
to divide the county into districts, is void and of no
effect.

At the time of the framing of the Constitution the
convention adopted a schedule, which was made a part
of it, and ratified by a vote of the people.  The purpose
of this schedule, as stated in the preamble, is as follows:
" That no inconvenience may arise from the changes in
the Constitution of this State, and in order to carry the
same into complete operation, it is hereby declared," etc.
Section 22 of this schedule provides:

"Every county, except Mackinaw and Chippewa,
entitled to a Representative in the Legislature at the
time of the adoption of this Constitution, shall continue
to be so entitled under this Constitution; and the county
of Saginaw, with the territory that may be attached,
shall be entitled to one Representative; the county of
Tuscola and the territory that may be attached, one
Representative; the county of Sanilac and the territory
that may be attached, one Representative; the counties of
Midland and Arenac, with the territory that may be
attached, one Representative; the county of Montcalm,
with the territory that may be attached thereto, one
Representative; and the counties of Newaygo and Oceana,
with the territory that may be attached thereto, one Rep-
resentative.  Each county having a ratio of representa-
tion and a fraction over equal· to a moiety of said ratio
shall be entitled to two Representatives, and so on above
that number, giving one additional member for each
additional ratio."

At the time of the adoption of the Constitution of
1850 there were 7 organized counties in the Upper Penin-
sula of the State, including Houghton county, and 33
organized counties in the Lower Peninsula.  The county

of Houghton, by the terms of section 22 of the schedule, was then entitled to one Representative at least; and each organized county, except Mackinaw and Chippewa, was regarded as a unit for representative purposes, and to be dealt with by the Legislature only as a whole. By the plain provisions of section 3, art. 4, of the Constitution, and of section 22 of the schedule, it is manifest that the Legislature, in apportioning the Representatives, should take into consideration the fact that certain counties had been organized prior to the adoption of the Constitution, and such counties, except Mackinaw and Chippewa, would be entitled to one Representative at least; that, where a county was thereafter organized, with such territory as might be attached thereto, it would be entitled to a separate Representative when it had attained a population equal to a moiety of the ratio of representation, and that each county was to be regarded as a unit; also, that when any county then organized, or thereafter organized, should be entitled to more than one Representative, such county should be divided into districts by the board of supervisors, but that such county was also to be regarded as a unit; again, if not alone entitled to one Representative, that it must, as a whole, be joined with other entire counties and other territory to send one Representative.

These limitations by the Constitution are placed upon the power of the Legislature in apportioning Representatives to the various counties of the State. No other Legislature since the adoption of the present Constitution, in 1850, has ever given any other interpretation to the Constitution. It had never been thought that the Legislature has the power, under the Constitution, to divide a county in making representative districts, until the present act was passed by the Legislature of 1891. By none of the eight apportionment bills passed since

1850 has this been attempted; but, on the contrary, in every bill so passed, the county has been regarded as a unit. This has not arisen from matter of accident in the apportionment, for by the various acts there is a distinct recognition of the fact that the Legislature has no power, under the Constitution, to divide a county. The first apportionment act after the adoption of the Constitution recognized that limitation of power. Act No. 104, Laws of 1855. That act provided that "the House of Representatives shall hereafter be composed of members elected agreeably to a ratio of one Representative for every 7,000 white persons * * * in each organized county." And the acts of 1861, 1865, 1871, and 1875 use the same language. The act of 1881 further says: "And one Representative to *each county* having the largest fraction more than a moiety of said ratio."

It is apparent, therefore, that the Legislature had no power to divide the county of Houghton, and set off a portion of its territory into another district. Under our Constitution and form of government the county has come to be regarded as of much importance in the administration of the affairs of the State and in the matter of local self-government. The boards of supervisors may have conferred upon them, under section 38, art. 4, of the Constitution, powers of a local, legislative, and administrative character. Such powers have been conferred from time to time, so that the county, with its county-seat established, and its own officers to manage its affairs, represents the interests of the State in that part of the territory designated as a county. Many of these counties existed at the time of the adoption of the present Constitution, and the formation of others was provided for as local interests might demand. The interests of the people of a county center around its seat of government, and the people of a county in the past have

always been represented in the lower house of the Legislature by one of its own constituency. As was said by Mr. Justice Orton in *State v. Cunningham,* 81 Wis. 485 (51 N. W. Rep. 730):

"The people have a commendable pride in their own counties, and have more or less a common feeling and interests, and participate together in all their county affairs. They have a right to be represented by their own members of the legislature, and the members themselves can better represent them, and promote and protect their interests."

It is contended, however, by the Attorney General, who appears for the respondent in this case, that, though the Legislature may have made a mistake in dividing Houghton county, yet, if the act is otherwise valid, it should not be declared unconstitutional. It will be seen that, if the provisions of section 22 of the schedule to the Constitution had been followed in making the apportionment, Houghton county, having a ratio of representation and a fraction over equal to a moiety, would be entitled to two Representatives, so that, while the act is invalid, inasmuch as it attempts to divide the county and set off a portion into another district, it also deprives the county of Houghton of that representation to which, under this section, it would be entitled. This Court has no power, however, to make an apportionment, and could in no case hold that two Representatives should be elected from that county. Under section 3, art. 4, of the Constitution, the whole number of Representatives cannot exceed 100. The Legislature by the act fixed the utmost limit of representation, and, if it should now be held by this Court that Houghton county shall have two Representatives, it would make the total number 101, or one more Representative than the Constitution recognizes. This would be the effect of such a holding, or it would deprive Keweenaw and Isle Royal counties of all representation.

We have no power to do this, or to declare what county or counties shall lose a Representative in order to make the number good to Houghton county.

Some argument is made that the Legislature was bound under the provision of section 3, art. 4, declaring that "each representative district * * * shall consist of convenient and contiguous territory," to unite Keweenaw and Isle Royal counties to the county of Houghton, for the reason that, within the meaning of the Constitution, they were not convenient and contiguous territory to any other county. This clause in the Constitution does not bear the restricted meaning contended for. It does not mean in contact by land. Certainly, so far as the islands are concerned, they may be considered contiguous, although separated by wide reaches of navigable deep waters. Isle Royal and other islands would go unrepresented if this were not so; and they may be as well declared convenient and contiguous territory to Baraga, Ontonagon, Marquette, or other counties bordering on the deep waters of the lake, as to Houghton county. We think this is the meaning of these words as used in the Constitution. Keweenaw county was set off from Houghton county in 1861. The apportionment act of 1865 gave her one Representative, she then having a moiety of a ratio. That of 1871 made Ontonagon and Keweenaw together a district, the latter county having then less than a moiety of a ratio. The act of 1875 joined her with Isle Royal, Baraga, and Ontonagon; that of 1881 with the same counties; that of 1885 the same; during all of which time Houghton county was entitled to one Representative only. It was not thought in those times that Keweenaw was not convenient and contiguous to those counties. It would seem, therefore, that there was no difficulty in placing Keweenaw and Isle Royal counties in a district with convenient

and contiguous territory without dividing a county to make a district. The Legislature had no constitutional power to divide the county of Houghton, and, we believe, no necessity existed, in apportioning the members of the Legislature to each county, to do so.

Many other glaring unconstitutional provisions of the act could be pointed out,—provisions applying to other counties, where many are deprived of the number of members to which under the ratio they are entitled, and other counties given more members than such counties would be entitled to under the ratio. It is, of course, well known that an equal and exact division of the members among the different counties cannot be made, and all that the Constitution contemplates is that the division shall be as equal as may be; but where one county is given more Representatives than it is entitled to, to the detriment of other counties, without any necessity or just cause, the county deprived of a member may well complain, and for such reason the act may be held void. But we need not, in the present controversy, enter upon a discussion of that subject, as it is apparent that Hough-ton county could not constitutionally be divided, and one portion of its territory put into another district.

The prayer of the petition, however, cannot be granted as fully as the claim is made. As we have said, we have no power to make an apportionment, and the board of supervisors of that county would have no right to appor-tion two Representatives to that county, as, in that case, the number would exceed the constitutional limit. But, for the reasons above given, we must hold the whole act unconstitutional and void.

In view of the facts set up in the petition and admitted by the answer, the writ must be granted, directing the Secretary of State to give notice of the election of members of the Legislature throughout the State in accord-

ance with the preceding apportionment, under Act No.
255, Laws of 1881, for the reasons set out in the opinion
of my Brother MORSE, unless in the meantime the Legis-
lature shall be assembled, and apportion the members
anew.

The other Justices concurred with LONG, J.

MORSE, C. J.   The main question involved in this
controversy is the right of the Legislature to dismember
a county in the formation of representative districts.   It
is argued that there is no express prohibition in the
Constitution against the division of a county, as was
done in the apportionment of 1891, and attaching a por-
tion of it to other counties to form a representative dis-
trict.   But such prohibition is plainly implied when the
provisions in relation to Representatives in the Legisla-
ture are taken as a whole, and considered together, as
they must be, in construing their meaning.   It is very
evident that it was not intended by the Constitution
that counties should be divided unless entitled to two or
more members, and then it is expressly provided that
the division shall be made by the board of supervisors,
at such time and place as the Legislature shall direct.
The Constitution provides not only that each county
thereafter organized shall be entitled to a separate Rep-
resentative when it has attained a population equal to a
moiety of the ratio of representation, but the schedule,
which, from its reading, must be held to be in operation
for all time, unless it shall be stricken out or amended,
also provides that " each county having a ratio of rep-
resentation and a fraction over equal to a moiety of said
ratio shall be entitled to two Representatives, and so on
above that number, giving one additional member for
each additional ratio."   These provisions negative the
idea of dividing counties and joining parts of two or

more counties, or a part of one county to another entire
county, in order to get an equality of population in the
districts. Here, as in the senatorial apportionment, the
county is the chief factor. The provision that "each
district shall contain, as nearly as may be, an equal num-
ber of inhabitants, exclusive of persons of Indian descent
who are not civilized, or are members of any tribe, and
shall consist of convenient and contiguous territory,"
does not conflict with this main idea of representation
by counties. The words "as nearly as may be" are
capable of sufficient expansion to meet all difficulties
that lie in the way. The number of inhabitants in each
district is to be as equal as may be under a compliance
with the other provisions of the Constitution, which
compel a representation by counties. The Constitution
does not look to a division of counties to obtain equality
of population in the districts. For instance, if two
counties adjoining contain, one of them a ratio, and a
fraction over equal to a moiety of such ratio, and the
other a population equal to a moiety of the ratio, the
Constitution does not contemplate that the county hav-
ing the excess over the ratio shall be divided, and
enough of its territory added to the lesser county to
make it equal a ratio, so that two districts shall be com-
posed of the two counties in this way; but expressly pro-
vides that the larger county in population shall have two
members, and the smaller county one, making three dis-
tricts out of two ratios. If it had been intended that a
county should be divided, and a part of its territory
added to some other county, or a portion of some other
county, in order to equalize more perfectly the popula-
tion of the districts, these two provisions—one giving
an additional Representative for a moiety, and the other
one for a moiety when the population of the county did
not reach the ratio—would not have been inserted in the

Constitution. In fact, a county cannot be dismembered and carry out these two clauses of the Constitution.

In this case, Houghton county, under one of these provisions, was entitled to two Representatives, and when a portion of it was detached and added to Keweenaw and Isle Royal counties, and the balance of the county given but one Representative, the clear provisions of the Constitution were violated and ignored. It is plain to me that the framers of the Constitution intended that the county, as well as the township, should be treated as a unit in the formation of representative districts, except when a county was entitled to more than one Representative. In such case the Legislature cannot divide. It must be done by the local legislature, the board of supervisors.

It is contended by the Attorney General that the provision of the Constitution that no city shall be divided in the formation of such districts suggests that it was contemplated that a county might be divided, because a city might be, as some villages now are in this State, situated in two counties; and that, if it be held that a county cannot be dismembered under the Constitution, then the clause of that instrument which prohibits a division of a city might be nullified. But a city—especially one not in existence at the time of the adoption of the Constitution—is the creature of the law, and has no constitutional right of being. There was no city, at the time the present Constitution was adopted, situated in this way, and there has been none since. Nor can a city be created, embracing territory in more than one county, unless such city shall be made a county by itself, in view of the provisions relative to the apportionment of Representatives, without violating the plain intent of the Constitution. If, at the adoption of the Constitution, there had been a city thus situated, the contention of the

Attorney General would have much force; but, as it is, it has none.

It is also claimed that the Constitution, in relation to the apportionment of Representatives, cannot always be carried out in detail without violating some of its provisions. This is no doubt true, but it affords no argument in favor of the division of counties except in the cases provided by the Constitution. If one county can be dismembered, all of them can; and we might have, under the exercise of the legislative discretion, a representation ignoring counties altogether, and based solely upon the idea of equality of population. The schedule to the Constitution expressly provides that "every county, except Mackinaw and Chippewa, entitled to a Representative in the Legislature" at the time of its adoption, shall continue to be so entitled. When it is attempted to carry out this provision, and to give each county organized since the Constitution was adopted one Representative for a moiety of the ratio, and also every county a member for each ratio and an additional member for a moiety of a ratio, and then limit the number of Representatives to 100, or any number which shall be the quotient of the division of the whole of the population of the State by the ratio, it will be found that it cannot always be done without denying to some county its constitutional right of representation. For instance, the ratio of representation at 100 members, under the census of 1890, is 20,938. Under this census and ratio, if the Constitution be followed in all of its provisions, the counties entitled to one or more Representatives under the moiety system use up 97 out of the 100 members, and there are still left 29 counties in the northern part of the State, with a population in round numbers of 137,000, out of which to carve three districts, each with a population of over 45,000,—more than double the ratio;

so that two men would not have the representation in these districts that one would have in the others.

So far as I have examined, there has never been an apportionment but this difficulty has been encountered; and it has been a subject of much perplexity and vexation in the Legislature. It has resulted always in the necessary denial to some county or counties of their full representation under the moiety system. This Court could not be called upon to enforce a constitutional provision incapable of enforcement. In case of making as equitable a division as possible under the Constitution,— and that is all that can be required,—it must be in the discretion of the Legislature to deprive some of the counties of their representation or additional representation upon the moiety plan; for two ratios cannot always be given three Representatives, and at the same time limit the number of the whole to one for each ratio. But in such discretion the counties having the least number of inhabitants above the ratio 'or the moiety of the ratio should be the ones to suffer this deprivation. For instance, in the present apportionment Houghton county, with a population of 35,389, was entitled, under the moiety plan, to two Representatives, as were also Sanilac, Tuscola, Menominee, Macomb, and Montcalm. These counties, in population, under the census of 1890, were as follows: Menominee, 33,639; Montcalm, 32,637; Sanilac, 32,589; Tuscola, 32,508; Macomb, 31,813. Of these six counties, if three were to be left out, Houghton, Menominee, and Montcalm were entitled to two members each, and Sanilac, Tuscola, and Macomb to one each. But the Legislature gives two each to the last three, and only one to each of the first three above named, thus reversing the constitutional order of preference. Under the Constitution all of them are entitled to two, if the various provisions of the Constitution can be so worked

out as to give each of them two. If they cannot, then the one or more left out should be those having the least population. There can be no legislative discretion, under the Constitution, to give a county of less population than another a greater representation. Such action would be arbitrary and capricious, and against the vital principle of equality in our government, and it is not intended or permitted by the Constitution; nor could such action lead to any good result. There can be found no excuse for it.

The relator prays that the Secretary of State deliver a notice to the sheriff of Houghton county that two Representatives are to be chosen in said county at the next election, and for such other and further relief as to the Court may seem proper in the premises. The special prayer cannot be granted. The board of supervisors have no power to divide Houghton county into two districts, unless so authorized by the Legislature. Their action in this respect is null and void. But the people of the county are entitled to vote together for a Representative. No portion of them can be detached and joined to another county. The apportionment act of 1891 is void, because it undertook to dismember Houghton county, and because the Constitution was also violated in giving counties two Representatives having a less population than counties which were accorded but one.

The law of 1885 is also unconstitutional, for the reason that the counties, or some of them, were given representation in defiance of the Constitution, and without the discretion of which I have spoken. Bay county, with a population of 51,221, was given but two Representatives, while Lenawee county, with a less population, to wit, 49,584, was given three. This was not the exercise of constitutional discretion, but an arbitrary determination for some reason other than a desire to conform to the

Constitution. Under the moiety clause, Bay, Lenawee, and St. Clair were entitled, in 1885, in the order named, to three Representatives. If only one could be given this number, the Constitution required it should be Bay; if two, Bay and Lenawee.

An examination of the apportionment act of 1881 shows it to have been within the constitutional discretion of the Legislature, and therefore the Secretary of State must give his notices under that law, unless a new and valid apportionment shall be made by the Legislature.

The other Justices concurred with MORSE, C. J.