[File No. 7000]

ADRIAN EGBERT, Ray L. Lake, A. F. Hills, C. A. Berg, E. C. Leonard, and Archie Lake, on Behalf of Themselves and all Other Taxpayers of the City of Dunseith, State of North Dakota, Appellants, v. THE CITY OF DUNSEITH, Glen D. Shelver, as Mayor, William Evans, Frank McAtee, A. F. Lilleby and John Awalt, as Members of the City Council of the City of Dunseith, State of North Dakota, Respondents.

(24 NW2d 907)

Opinion filed March 16, 1946.   Rehearing denied April 16, 1946

*Alvin C. Strutz,* for appellants.

*John A. Stormon,* for respondents.

*Charles H. Shafer* and *P. M. Clark,* amici curiæ.

NUESSLE, J. This is a taxpayers' suit brought by plaintiffs on behalf of themselves and all other taxpayers of the city of Dun-

seith to enjoin the defendants, the Mayor and members of the city council, from taking any action toward the establishment and maintenance of a municipal liquor store.

The facts are stipulated. The City of Dunseith by a majority vote of its electors at a special election held for that purpose, voted in favor of the establishment of a municipal liquor store. Pursuant to this vote the defendants proposed to establish such a store in the city. This action was then begun. After hearing had the trial court held for the defendants, denied the injunction, and dismissed the action. Judgment was entered accordingly. Whereupon the plaintiffs perfected this appeal.

Plaintiffs contend here, as they did in the trial court, that under the provisions of § 185 of the constitution of North Dakota, hereinafter set forth, the city may not engage in the liquor business. The defendants take issue with this contention. They insist that not only does § 185 authorize a city to engage in any industry, enterprise or business, including the liquor business; but that it is self-executing and without any action on the part of the legislature a city may engage in that business; that even if § 185 be not self-executing the legislature has acted in that behalf and authorized cities to engage in and carry on that business and provided for its licensing and regulation.

Section 185 of the constitution provides: "The state, any county or city may make internal improvements and may engage in any industry, enterprise or business, not prohibited by article 20 of the constitution, but neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable "support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation."

As originally adopted § 185 read: "Neither the state nor any county, city, township, town, school district or any other political subdivision shall loan or give its credit or make donations to or in aid of any individual, association or corporation except for necessary support of the poor, nor subscribe to or become the

owner of the capital stock of any association or corporation, nor shall the state engage in any work of internal improvement unless authorized by a two-thirds vote of the people."

It was first amended in 1914 by adding thereto: "Provided, that the state may appropriate money in the treasury or to be thereafter raised by taxation for the construction or improvement of public highways."

Thereafter it was amended to its present form by article 32 of the Amendments to the Constitution, approved and ratified at the general election on November 5, 1918.

Article 20 of the constitution provided: "No person, association or corporation shall within this state manufacture for sale or gift, any intoxicating liquors, and no person, association or corporation shall import any of the same for sale or gift, or keep or sell or offer the same for sale, or gift, barter or trade as a beverage. The legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article and shall thereby provide suitable penalties for the violation thereof." This article was adopted as a part of the original constitution by a separate vote of the people at the time (October 1, 1889) of the adoption of the constitution, as provided by § 20 of the Schedule and Ordinance. It was repealed by constitutional amendment submitted by initiative petition at the general election on November 8, 1932.

The constitution of the state is its paramount law. It is a self-imposed restraint upon the people of the state in the exercise of their governmental sovereign power, either by themselves through the initative or by their agency, the legislature. See State v. First State Bank, 52 ND 231, 202 NW 391; Baird v. Burke County, 53 ND 140, 205 NW 17; State v. Houge, 67 ND 251, 271 NW 677. It is not immutable and may be repealed or amended in the manner prescribed by § 202 thereof. Though repeals by implication are not favored the provisions of a constitution may be impliedly repealed or abrogated by the adoption of changes in other portions which render such provisions obnoxious or ineffective. 18 CJS p 30. And a constitution like other

laws is subject to construction by the courts. "But it is a cardinal rule of construction that a constitution must be so construed as to give effect to the intention of the people who adopted it." Barry v. Traux, 13 ND 131, 99 NW 769, 65 LRA 762, 112 Am St Rep 662, 3 Ann Cas 191. And see 1 Cooley, Constitutional Limitations, 8th ed, pp 124 et seq, 11 Am Jur 674, Constitutional Law, 16 CJS p 51. "Generally speaking, principles of construction applicable to statutes are also applicable to constitutions, but not to the extent of defeating the purposes for which a constitution is drawn." 16 CJS p 51, and cases cited: 11 Am Jur 68, Commerce.

When the people amended § 185 of the constitution to its present form, they said "The state, any county or city . . . may engage in any industry, enterprise or business not prohibited by Article 20 of the Constitution . . . ." This amendment created a new governmental function—that of engaging in and carrying on commercial and industrial enterprises theretofore considered as private, in competition with private business. The proponents of the amendment and those who voted for its adoption must have believed it was essential to enable the state government to engage in these enterprises, otherwise they would not have proposed and adopted it. See, in this connection, State ex rel. Coleman v. Kelly, 71 Kan 811, 81 P 450, 70 LRA 450, 6 Ann Cas 298; Rippe v. Becker, 56 Minn 100, 57 NW 331, 22 LRA 857; White Eagle Oil & Ref. Co. v. Gunderson, 48 SD 608, 205 NW 614, 43 ALR 397, and cases cited. The amendment was permissive in its nature. It excepted and excluded from this permission only one business: the liquor business. It did not denominate that business in those words but designated it by particular and specific reference to Article 20 of the constitution which pertained solely to that business. There can be no question but that when the people adopted the amendment they intended the business prohibited by Article 20 was the one business in which the state, its counties and its cities might not engage. And it is to be noted that the amendment contained no express intent that the repeal of Article 20 should in any way affect it.

The defendants argue that though the reference in the amendment to Article 20 was particular and specific, the people intended merely that the state and its municipal agencies might not engage in any business that was prohibited by law; that this was done only to avoid a conflict between § 185 in its amended form and Article 20; that there was no intention that should Article 20 subsequently be repealed the exception thus incorporated into § 185 should continue in effect; that therefore when Article 20 was repealed this exception was impliedly repealed and, as a result of the repeal, § 185 must now be read as though there were no reference to Article 20 in it.

On the other hand, the plaintiffs contend that it was the intention of the people when § 185 was thus amended to make sure that the state and its cities and counties might not engage in the business prohibited by Article 20 regardless of whether or not Article 20 remained in effect. Obviously there is room for difference of opinion as to what the people intended by thus amending § 185 and since this uncertainty exists and it is the duty of the court to determine their intention, the court is under the necessity of resorting to the canons of construction in order to do so.

One rule applied in the construction of statutes is that where one statute adopts the particular provisions of another statute by a specific and descriptive reference to the statute or provision adopted the effect is the same as though the statute or provision adopted had been incorporated bodily into the adopting statute. Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent or necessary implication. Hassett v. Welch, 303 US 303, 82 L ed 858, 58 S Ct 559; State ex rel. Miller v. Leich, 166 Ind 680, 78 NE 189, 9 Ann Cas 302, and note; 2 Lewis's Sutherland, Statutory Construction, 2d ed, § 405; Endlich, Interpretation of Statutes, §§ 85 and 492; 50 Am Jur 58, Statutes, and cases cited in notes.

Though it cannot be said that the amendment to § 185 adopts the provisions of Article 20, it does particularly refer to

Article 20 and to the business prohibited by Article 20. It thus designates the business which is excluded from the permission given to the state to enter into private business enterprises and we can see no reason why the rule of construction stated above should not be applied in such case to ascertain the intent and purpose of the people when they adopted the amendment. So, applying it in the instant case, we cannot do other than hold that when the people adopted the amendment they intended that the negation therein contained should be absolute and not contingent upon any subsequent modification or repeal of Article 20.

The defendants argue, however, it is so inconsistent to permit private enterprise to engage in the liquor business and, at the same time, to deny that right to the state that it is unreasonable to say the people intended such a result. We can see no merit to this contention, however. There is no inconsistency. No more than there was in denying the state the right to engage in other general business enterprises in competition with private business, as was the case prior to the adoption of the amendment to § 185.

Defendants further contend that all the circumstances before, at the time of, and since the adoption of the amendment to § 185, make plain that the people in adopting it did so only to avoid a conflict between that section as amended and Article 20 and that there was no purpose in them to deny to the state and its agencies the right to enter into the liquor business should Article 20 subsequently be repealed. Defendants in that behalf point to the political, legislative and economic history of the state up to the time of the adoption of the amendment as evidencing their intent in doing so, and to the legislative and popular action since the repeal of Article 20 as evidencing the construction put upon the amendment both by the legislative bodies and the people themselves. Let us see.

In 1918, when the amendment to § 185 was proposed to enable the state to engage in general commercial business, it meant that if adopted the state would undertake an adventure at least novel and untried, if not hazardous. Those who believed the liquor

10

traffic was evil and should be prohibited were zealous and active in support of the prohibitory law. The proponents of the amendment were not advocating that the state engage in the liquor business—in fact, many of them would have been violently opposed to such a proposal. They were concerned with its engaging in other enterprises which they believed would be beneficial to the people of the state and which could not be undertaken without the amendment. There was very great opposition to the amendment. If it were to have the effect of impliedly modifying or repealing Article 20, many advocates of prohibition would most vigorously oppose it even though they believed that the state should be permitted to engage in the other industries. Accordingly, those interested in advancing the cause of the amendment included in it the exception of the business prohibited by Article 20. It is true in 1932 the people of the state, through the initiative, repealed Article 20, but that repeal left in effect all of the statutes outlawing and prohibiting the liquor traffic theretofore enacted pursuant to its mandate. See State v. Ligaarden, 59 ND 475, 230 NW 729, 70 ALR 126; State v. Norton, 64 ND 675, 255 NW 787; Fylken v. Minot, 66 ND 251, 264 NW 728, 103 ALR 320. And these statutes remained in effect in the main until the enactment of the so-called liquor control act by initiative measure on November 3, 1936. See chapter 259, Session Laws 1937. In the meantime, however, chapter 176, Session Laws 1933, containing among other provisions one for the establishment of municipal liquor stores, was enacted and became a law without the signature of the governor. This enactment, however, was expressly repealed by initiative measure, approved by the people on September 22, 1933 (see page 495, Session Laws 1935). This measure also, among other things, provided for the manufacture, sale and distribution of beer but contained no provision authorizing municipal liquor stores. And at that same election three initiated measures—one providing for the importation, transportation, sale, use and possession of intoxicating liquor and beer—one legalizing the importation, transportation, sale and possession and manufacture of liquor—and one provid-

ing for the general repeal of the statutes theretofore enacted pursuant to the mandate of Article 20 of the constitution, were disapproved. (See pages 499, 500, 501, Session Laws 1935.) A municipal liquor control act was enacted by the legislature in 1935. (See chapter 203, Session Laws 1935.) This statute, among other things, provided that any incorporated city, having a population of 200 or more, might establish, own and operate, a municipal liquor store. It was referred and was disapproved. (See page 517, Session Laws 1937.) In July 1939, an initiated measure providing for a system of municipal liquor control, purchase and sale, etc., of alcohol and alcoholic beverages, by any city or village, was disapproved by a vote of the people of more than four to one. (See page 584, Session Laws 1941.) In 1943 the legislature adopted a concurrent resolution for an amendment to the constitution to permit municipal liquor stores. (See chapter 99, Session Laws 1943.) This was submitted to the people at the November 7, 1944 election and was decisively disapproved. (See page 494, Session Laws 1945.) It is true that at the 1945 session of the legislature, chapters 50 and 51 of the 1945 Session Laws were enacted, providing that cities may engage in the business of selling intoxicating liquor and providing for the licensing and regulation of municipal and other liquor stores. All in all, however, this review of the political and legislative history of the state not only fails to sustain the defendants' contention, but weights the scale down against it.

The judgment is reversed and the case is remanded to the district court for disposition in accordance with this opinion.

CHRISTIANSON, Ch. J., and BURKE, MORRIS and BURR, JJ., concur.