STATE of North Dakota ex rel. Ray LEIN, John Hove, John M. Murphy, Walter Durkop, and Russell Duncan, Petitioners,

v.

P. O. SATHRE, Leslie R. Burgum, Ben Meier, Ben Wolf and Arthur Link, and Ben Meier, Secretary of State for the State of North Dakota, Respondents.

No. 7998.

Supreme Court of North Dakota.

March 9, 1962.

Conmy, Conmy & Feste, Fargo, for petitioners.

Leslie R. Burgum, Atty. Gen., Paul M. Sand, Asst. Atty. Gen., William R. Pearce, Sp. Asst. Atty. Gen., for respondents.

MORRIS, Judge.

The petitioners herein presented to this Court a petition setting forth that they are citizens of the United States and of the State of North Dakota and as such are entitled to vote for members of the State Legislature, and that the Thirty-seventh Legislative Assembly of the State of North Dakota failed to make the reapportionment of members of the House of Representatives among the senatorial districts as provided by Section 35 of Article II of the Constitution of the State of North Dakota. Thereupon a group of persons consisting of the Chief Justice of the Supreme Court, the Attorney General, the Secretary of State, and the majority and minority leaders of the House of Representatives proceeded to make an apportionment under the provisions of that section of the Constitution and petitioners contend that the apportionment so made is unconstitutional and void for reasons that we shall discuss. The petitioners ask this Court to take original jurisdiction, determine that the purported reapportionment made by the group is void, and restrain the Secretary of State from doing any act necessary to the holding of elections for members of the House of Representatives until such time as a reapportionment is made in accordance with the Constitution.

This controversy is clearly one affecting the sovereignty of the State and the franchises, prerogatives and liberties of the people and is clearly within the jurisdiction of this Court as prescribed by Section 87 of the North Dakota Constitution.

In State of North Dakota ex rel. Aamoth, the petitioner, against the same respondents, N.D., 110 N.W.2d 228, involving a similar attack upon the validity of the same reapportionment, we took jurisdiction of the case and determined that the attack was premature and dismissed the petition.

At the hearing of this case it was agreed between counsel for all of the parties and the Court that the matter would be submitted at the one hearing on both the question of jurisdiction and on the merits, and it was argued and briefed accordingly.

We now proceed to a consideration of the constitutionality and validity of the apportionment made by a majority of the group designated by Section 35, with the Secretary of State voting "no." The result was set forth by a proclamation of the Chief Justice pronouncing such apportionment, dated May 26, 1961, and filed in the office of the Secretary of State May 29, 1961. No questions arising under the

United States Constitution are presented to this Court, and we are informed by counsel that they are involved in another action now pending in Federal courts.

The Thirty-sixth Legislative Assembly (1959) passed Senate Concurrent Resolution M, Laws 1959, c. 438, proposing an amendment to the Constitution, which reads as follows:

"Section 26. The senate shall be composed of forty-nine members.

"Section 29. Each existing senatorial district as provided by law at the effective date of this amendment shall permanently constitute a senatorial district. Each senatorial district shall be represented by one senator and no more.

"Section 35. Each senatorial district shall be represented in the House of Representatives by at least one representative except that any senatorial district comprised of more than one county shall be represented in the House of Representatives by at least as many representatives as there are counties in such senatorial district. In addition the Legislative Assembly shall, at the first regular session after each federal decennial census, proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, according to the population of the several senatorial districts. If any Legislative Assembly whose duty it is to make an apportionment shall fail to make the same as herein provided it shall be the duty of the Chief Justice of the Supreme Court, Attorney General, Secretary of State, and the majority and minority leaders of the House of Representatives within ninety days after the adjournment of the legislature to make such apportionment and when so made a proclamation shall be issued by the Chief Justice announcing such apportionment

which shall have the same force and effect as though made by the Legislative Assembly."

This amendment was approved by the people on June 28, 1960, by a vote of 84,002 to 66,529. See Session Laws N.D. 1961, c. 405, page 692. The Thirty-seventh Legislative Assembly (1961), being the first regular session after the 1960 Federal Decennial Census, failed to apportion pursuant to Section 35, as amended, and the group of officials upon whom the duty to apportion then devolved proceeded to act.

It is argued that participation of the Attorney General and Secretary of State was prohibited because they are executive officers of the State government, and that apportionment of the membership of the Legislature is a legislative matter. The petitioners refer to Section 25 of the State Constitution which vests the legislative power of the State in the Legislature, subject to the reserve power in the people of the initiative and referendum, and Section 37 of the Constitution which prohibits the Attorney General and Secretary of State from holding any office in either branch of the Legislative Assembly.

With respect to the Chief Justice, it is pointed out that Section 96 of the Constitution prohibits the imposition by law upon the Supreme Court, or any of the judges thereof, duties other than judicial. It is then argued that the designation of a majority of the group by Section 35 is violative of other provisions of the Constitution and therefore void, and that the group had no power to act.

■■ This argument is wholly without merit. All of the sections upon which the petitioners rely have been a part of the Constitution for many years. Section 35, being a recent amendment, governs to the extent that it creates exceptions to the earlier prohibitions by vesting the three officers named with the specific power and duty to act as members of a group that were directed to proceed with reapportion-

ment under the circumstances and in the manner prescribed by Section 35. The applicable rule of law is stated in Cooley's Constitutional Limitations, Eighth Edition, Volume One, page 129, as follows:

"Upon the adoption of an amendment to a constitution, the amendment becomes a part thereof; as much so as if it had been originally incorporated in the constitution; and it is to be construed accordingly. If possible, it must be harmonized with all the other provisions of the constitution. If this cannot be done the amendment will prevail."

Section 35 is the latest expression of the will of the people with respect to matters embraced therein and prevails over all pre-existing inconsistent constitutional provisions. 11 Am.Jur., Constitutional Law, Section 54; 16 C.J.S. Constitutional Law § 26; Thoman v. City of Lansing, 315 Mich. 566, 24 N.W.2d 213. See also Dawson v. Tobin, 74 N.D. 713, 24 N.W.2d 737; Egbert v. City of Dunseith, 74 N.D. 1, 24 N.W.2d 907, 168 A.L.R. 621; Swanson v. State, 132 Neb. 82, 271 N.W. 264.

We now turn to a consideration of the effect of the amendment approved on June 28, 1960. The amendment of Section 29 took from the Legislative Assembly the power to fix the number of senators and determine the boundaries of their districts. It permanently fixed both the number of senators and the district boundaries as they existed at the time of the adoption of the amendment. The amendment of Section 26 fixed the number of senators at 49. The amendment of Section 35 dealt with the House of Representatives. The first sentence of that amendment gave one representative to each senatorial district, which accounted for 49 members of the House. It then further provided that districts consisting of more than one county should have as many representatives as there are counties in the district. This provision adds 12 more representatives, making a total of 61 members which are permanently provided

for by the Constitution under an apportionment which is beyond the power of the Legislature to change. We now consider the second sentence of Section 35, which imposes upon the Legislative Assembly the duty at its first regular session after each Federal Decennial Census to "proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, according to the population of the several senatorial districts." Thus the Legislature was directed to make a supplementary apportionment subject to the over-all limitation of House membership to 140 members as provided by Section 32.

■ The last sentence of Section 35 provides that if the Legislative Assembly should fail to make an additional apportionment, the duty to do so devolves upon the group of persons named to make the apportionment within 90 days after the adjournment of the Legislature. The question before us involves only the validity of the action of this group. We are not concerned with the validity of the apportionment made by the Constitution itself in the first sentence of Section 35 under which 61 members of the House of Representatives are provided for and apportioned. The apportionment that the group was authorized to make was subject to the same directions and limitations as were prescribed for the Legislature itself under the second sentence of the Section. It was required to be within the limits of the Constitution and according to the population of the several senatorial districts. The power to fix the total membership of the House within the limits prescribed by the Constitution was vested in the group. The group fixed the limit at 115, which is not subject to revision or change by this Court. Sixty-one members have already been apportioned under the first sentence of Section 35. There remain 54 members to be apportioned among the districts according to population. This means according to the number of inhabitants of each senatorial district. Under Section 35,

40 districts are given one representative each. The remaining districts receive an apportionment of an additional representative for each county in a district above one, with the result that seven districts get a total of two members each, one district gets three, and one gets four. The question now is whether in apportioning the remaining 54 representatives, the 61 already apportioned by Section 35 shall be included in the computation or shall the 54 be apportioned without regard to the 61. While the language of the second sentence of the Section permits of the latter construction, such a construction would lead to a result bordering on the absurd and aggrevate the disproportion otherwise inherent in the apportionment of the 61 which results from the allocation to multi-county districts of representatives equal to the counties in each of such districts. We have no doubt that the purpose of requiring the Legislature to apportion representatives in addition to the 61 was to provide for an equalizer to the end that the total representation would more nearly approach absolute equality on the basis of population than that which resulted from the apportionment of the first 61 members. Such a result can be achieved only by charging the multi-county districts with the representatives apportioned to them by virtue of the additional counties which they contain.

■ It is presumed that the people who adopted a constitutional provision intended a reasonable result. State ex rel. Rausch v. Amerada Petroleum Corporation, 78 N.D. 247, 49 N.W.2d 14; State v. Feist, N.D., 93 N.W.2d 646. This Court has consistently held that a constitution must be construed to give effect to the intention of the people who adopted it. Barry v. Traux (Truax), 13 N.D. 131, 99 N.W. 769, 65 L.R.A. 762, 112 Am.St.Rep. 662, 3 Ann.Cas. 191; Egbert v. City of Dunseith, 74 N.D. 1, 24 N.W.2d 907, 168 A.L.R. 621; State v. Feist, supra. We have also said:

"All provisions bearing upon a particular subject should be brought into view, the fundamental aim and object kept in mind, and the interpretation should be such as to effectuate the fundamental aim and object." Goughnour v. Brant, 47 N.D. 368, 182 N.W. 309.

In re Dowling, 219 N.Y. 44, 113 N.E. 545, involves the construction of an apportionment provision of the New York Constitution. The court held that it should not be given a construction that leads to manifestly unintended results and that a meaning should not be given to words that are subject to construction that will defeat the purpose and intent of the provision or make it absurd. We reach the conclusion that in making the apportionment of the 54 additional representatives, multi-county districts must be charged with those representatives that have been allocated to them by virtue of the additional counties which they contain. Counsel for the petitioners does not contend otherwise; in fact, the computation submitted by them in support of their argument is consistent with this construction.

■ The last Federal Census shows that North Dakota has a population of 632,446. On the basis of a House of Representatives consisting of 115 members, this means a ratio of one representative for 5,500 persons. Since it is impossible for this ratio to be maintained in distributing 115 representatives among the 49 senatorial districts, perfect equality of representation cannot be obtained. The authorities generally recognize that this situation, of necessity, vests in the Legislature or other apportioning body a discretion to make an apportionment that varies to some extent from absolute equality of representation. Our problem is to determine whether or not the action of the group falls within the limits of that discretion. If it does, they have made a valid apportionment. If they have exceeded the limits of their discretion, the apportionment is unconstitutional and void.

In State ex rel. Lamb v. Cunningham, 83 Wis. 90, 53 N.W. 35, 17 L.R.A. 145, 35 Am.

St.Rep. 27, the following statement is quoted from State ex rel. Attorney General v. Cunningham, 81 Wis. 440, 51 N.W. 724, 15 L.R.A. 561:

> "It is proper to say that perfect exactness in the apportionment according to the number of inhabitants is neither required nor possible. But there should be as close an approximation to exactness as possible, and this is the utmost limit for the exercise of legislative discretion."

In re Sherill et al., 188 N.Y. 185, 81 N.E. 124, 117 Am.St.Rep. 841, involves the application of a constitutional provision directing that each senate district should contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable. The court said:

> "As the discretion of the Legislature relating to the relative number of inhabitants in senate districts arises from necessity, it should cease where the necessity for discretion ends."

In Giddings v. Blacker, 93 Mich. 1, 52 N.W. 944, 16 L.R.A. 402, the court, in holding a legislative apportionment unconstitutional, said:

> "It was never contemplated that one elector should possess two or three times more influence, in the person of a representative or senator, than another elector in another district. Each, in so far as it is practicable, is, under the constitution, possessed of equal power and influence."

In Denney v. State, 144 Ind. 503, 42 N.E. 929, 31 L.R.A. 726, under a constitutional provision that required legislative apportionment to be according to the number of inhabitants, it was said that:

> "When the exact requirement of the constitution cannot be observed, then the obligation of observing such requirement as nearly as possible be-

comes, itself, of binding force under the constitution."

The foregoing case also quotes from the opinion of Chief Justice Morse in Board of Supervisors of the County of Houghton v. Secretary of State, 92 Mich. 638, 52 N.W. 951, 16 L.R.A. 432, as follows:

> "There can be no legislative discretion, under the constitution, to give a county of less population than another a greater representation."

By citing and quoting from the above cases we do not imply approval of a rule that would confine legislative discretion to the narrowest limits expressed in the foregoing decisions, but they serve to demonstrate that there is inherent in a constitutional direction to a legislature to apportion representatives among senatorial districts according to population a limited discretion to make the apportionment that will approach, as nearly as is reasonably possible, a mathematical equality.

We now turn to an examination of the apportionment made by the group as compared with results obtained by the use of two other methods of calculation that have been approved by courts and students of the problem. Formulas known as the Major Fraction formula and the Equal Proportions formula have met with such approval. Shaw Autry and Shafner v. Adkins, 202 Ark. 856, 153 S.W.2d 415; Asbury Park Press, Inc. v. Woolley, 33 N.J. 1, 161 A.2d 705. A computation under the Equal Proportions formula was submitted by the petitioners, while we have made our own computation under the Major Fraction formula. We used the same population figures as were used under the group plan. There is a variation with respect to two districts in the populations submitted by the petitioners under the Equal Proportions plan, but the difference is such that it does not affect our conclusions with respect to the constitutionality of the action taken by the group. A table of comparison follows.

## AVERAGE POPULATION PER REPRESENTATIVE
## BASED ON A HOUSE MEMBERSHIP OF 115.

| County | Dist. No. | Dist. Pop. | Rep. | Group Plan | Rep. | Major Frac. Formula | Rep. | Equal Prop. Formula |
|---|---|---|---|---|---|---|---|---|
| Ward | 29 | 42041 | 5 | 8408 | 7 | 6006 | 7 | 6006 |
| Cass | 9 | 38494 | 5 | 7699 | 7 | 5499 | 7 | 5499 |
| Burleigh | 27 | 34016 | 5 | 6803 | 6 | 5669 | 6 | 5669 |
| Stutsman | 23 | 25137 | 4 | 6284 | 4 | 6284 | 4 | 6284 |
| Williams | 45 | 22051 | 3 | 7350 | 4 | 5513 | 4 | 5513 |
| Cass | 10 | 21058 | 3 | 7019 | 4 | 5264 | 4 | 5264 |
| Morton | 30 | 20992 | 3 | 6997 | 4 | 5248 | 4 | 5248 |
| G. Forks | 7 | 20514 | 3 | 6838 | 4 | 5128 | 4 | 5128 |
| G. Forks | 6 | 19550 | 3 | 6517 | 3 | 6517 | 4 | 4887 |
| Stark | 31 | 18451 | 3 | 6150 | 3 | 6150 | 3 | 6150 |
| Mercer, Oliver, Dunn | 48 | 15765 | 3 | 5255 | 3 | 5255 | 3 | 5255 |
| McLean | 46 | 14030 | 3 | 4676 | 3 | 4676 | 2 | 7015 |
| Ramsey | 21 | 13443 | 3 | 4481 | 2 | 6721 | 2 | 6721 |
| Pembina | 1 | 12946 | 3 | 4315 | 2 | 6473 | 2 | 6473 |
| McIntosh, Logan | 36 | 12071 | 3 | 4023 | 2 | 6035 | 2 | 6035 |
| Barnes | 15 | 11847 | 2 | 5923 | 2 | 5923 | 2 | 5923 |
| Burke, Divide | 40 | 11452 | 2 | 5726 | 2 | 5726 | 2 | 5726 |
| Bottineau | 28 | 11315 | 2 | 5657 | 2 | 5657 | 2 | 5657 |
| McHenry | 34 | 11099 | 2 | 5549 | 2 | 5549 | 2 | 5549 |
| Adams, Hettinger | 49 | 10766 | 2 | 5383 | 2 | 5383 | 2 | 5383 |
| Billings, Bowman, Slope, Golden Valley | 39 | 10660 | 4 | 2665 | 4 | 2665 | 4 | 2665 |
| Rolette | 19 | 10641 | 2 | 5320 | 2 | 5320 | 2 | 5320 |
| Traill | 8 | 10583 | 2 | 5291 | 2 | 5291 | 2 | 5291 |
| Richland | 12 | 10521 | 2 | 5260 | 2 | 5260 | 2 | 5260 |
| Eddy, Foster | 32 | 10297 | 2 | 5148 | 2 | 5148 | 2 | 5148 |
| Mountrail | 44 | 10077 | 2 | 5038 | 2 | 5038 | 2 | 5038 |
| Cavalier | 18 | 10064 | 2 | 5032 | 2 | 5032 | 2 | 5032 |
| Grant, Sioux | 47 | 9910 | 2 | 4955 | 2 | 4955 | 2 | 4955 |
| Griggs, Steele | 16 | 9742 | 2 | 4871 | 2 | 4871 | 2 | 4871 |
| Kidder, Sheridan | 35 | 9736 | 2 | 4868 | 2 | 4868 | 2 | 4868 |
| Walsh | 4 | 9574 | 2 | 4787 | 2 | 4787 | 2 | 4787 |
| Benson | 20 | 9435 | 2 | 4717 | 2 | 4717 | 2 | 4717 |
| Wells | 33 | 9237 | 2 | 4618 | 2 | 4618 | 2 | 4618 |
| LaMoure | 24 | 8705 | 2 | 4352 | 2 | 4352 | 2 | 4352 |
| Emmons | 26 | 8462 | 2 | 4231 | 2 | 4231 | 2 | 4231 |
| Walsh | 3 | 8423 | 2 | 4211 | 2 | 4211 | 2 | 4211 |
| Richland | 37 | 8303 | 2 | 4151 | 1 | 8303 | 1 | 8303 |
| Dickey | 25 | 8147 | 2 | 4073 | 1 | 8147 | 1 | 8147 |
| Ransom | 14 | 8078 | 2 | 4039 | 1 | 8078 | 1 | 8078 |
| Cass | 11 | 7395 | 2 | 3697 | 1 | 7395 | 1 | 7395 |
| Pierce | 42 | 7394 | 2 | 3697 | 1 | 7394 | 1 | 7394 |
| McKenzie | 41 | 7296 | 2 | 3648 | 1 | 7296 | 1 | 7296 |
| G. Forks | 5 | 7149 | 1 | 7149 | 1 | 7149 | 1 | 7149 |
| Nelson | 17 | 7034 | 1 | 7034 | 1 | 7034 | 1 | 7034 |
| Sargent | 13 | 6856 | 1 | 6856 | 1 | 6856 | 1 | 6856 |
| Towner | 22 | 5624 | 1 | 5624 | 1 | 5624 | 1 | 5624 |
| Ward | 2 | 5031 | 1 | 5031 | 1 | 5031 | 1 | 5031 |
| Barnes | 38 | 4872 | 1 | 4872 | 1 | 4872 | 1 | 4872 |
| Renville | 43 | 4698 | 1 | 4698 | 1 | 4698 | 1 | 4698 |

Reference to the above table discloses that under the group plan the ratio of representatives to population in District 29 is 8,408 persons to each representative. In District 9 the ratio is 7,699. In Districts 37, 25, 14, 11, 42 and 41 the ratio is less than one-half of that of District 29, and in the last three districts enumerated, 11, 42 and 41, it is also less than one-half of the ratio of District 9, or in values of representation, residence in six districts is worth over twice as much as is residence in District 29, and in three of the six districts it is worth over twice as much as residence in either District 29 or District 9.

■ Comparing the results of the Group plan with the Major Fraction formula, the plan gives Districts 29 and 9 two representatives less than does the formula, while one less is given to Districts 27, 45, 10, 30 and 7. The Group plan gives one more than does the Major Fraction formula to Districts 21, 1, 36, 37, 25, 14, 11, 42 and 41. Thus there is a difference in the awarding of nine seats between the plan and the formula affecting 16, or approximately one-third, of all districts in the State. We point this out as another indication of the failure of the group to make an apportionment according to population. We do not determine that the formula is the only plan that may be used by the Legislature in making an apportionment within constitutional limitations. The variance of ratios and the degree of such variance, which we have pointed out, and the many departures from the results of the formulas shown by the table impel us to hold that the apportionment made by the group violates the constitutional mandate of apportionment according to the population of the several districts and is void.

■ It was asserted on argument that should we hold that the action of the group was void, there could be no apportionment under Section 35 until after the next Federal Decennial Census. We do not so construe Section 35. While the power of the group to act on behalf of the Legislature expired at the end of the 90-day period, the duty imposed upon the Legislature to reapportion is a continuing one. State v. Cunningham, 81 Wis. 440, 51 N.W. 724, 15 L.R.A. 561; Denney v. State, 144 Ind. 503, 42 N.E. 929, 31 L.R.A. 726; People ex rel. Carter v. Rice, 135 N.Y. 473, 31 N.E. 921, 16 L.R.A. 836; In re Opinion of the Judges, 61 S.D. 107, 246 N.W. 295.

In Jones v. Freeman, 193 Okl. 554, 146 P.2d 564, it is said:

"While the primary duty of apportioning the state rests upon the first Legislature elected after each Decennial Federal census, the duty is a continuing one and if the first Legislature fails to enact a valid law, the duty devolves upon each succeeding Legislature until it is performed. * * *

"Once a valid law is enacted no further act may be passed by the Legislature until after the next Federal Decennial census."

We are of the opinion that the duty of the Legislature to apportion is mandatory and continues until it is performed.

■ The petitioners ask that the Secretary of State be restrained from giving notice of state elections, furnishing forms for nomination, receiving filings of candidates, preparing ballots and instructions, certifying nominations, or doing any other act necessary to the holding of elections for members of the House of Representatives until such time as reapportionment is made in accordance with the Constitution. Such relief will not be granted. The Thirty-seventh Session of the Legislature took no action. The action taken by the group designated by Section 35 to apportion in event the Legislature failed to do so is void. There has been no apportionment under Section 35 of the Constitution. The last apportionment made, and the one under which legislative elections since have been held, is Chapter 7, Session Laws N.D.1931. It continues to be the law governing the apportionment under which legislative elections are held until it is superseded by a

valid apportionment made pursuant to Section 35 or pursuant to a further amendment of the Constitution. See State ex rel. Thomson v. Zimmerman, 264 Wis. 644, 60 N.W.2d 416, 61 N.W.2d 300. We have no reason to believe that the Secretary of State will not act in accordance with law and consistent with this opinion without direction or restraint on the part of this Court. The petition for a restraining order is denied.

BURKE and TEIGEN, JJ., and W. C. LYNCH, D. J., concur.

SATHRE, C. J., being disqualified, did not participate; Honorable W. C. LYNCH, Judge of the Fourth Judicial District, sitting in his stead.

STRUTZ, Judge (concurring).

I join the other members of the court in holding invalid the apportionment plan adopted by the apportionment board. I cannot, however, agree with the opinion in holding that, in apportioning the additional fifty-four representatives, the sixty-one which have been apportioned by the Constitution on the basis of one to a county must be taken into consideration. The opinion points out that a literal interpretation of this provision would lead to absurd results and that this court therefore should interpret the provision in such a way as to make effective what ought to be the aim of the provision being interpreted.

A court is permitted to construe a constitutional provision only where the meaning of that provision is in doubt. This court has held that, in the construction of a constitutional provision, words are to be given their plain, ordinary, and commonly understood meaning. Bronson v. Johnson, 76 N. D. 122, 33 N.W.2d 819; Cowl v. Wentz (N.D.), 107 N.W.2d 697. I do not believe the provision of Section 35, providing for the apportionment of the additional representatives, leaves any room for doubt. That section, after providing for one representative for each county, reads:

"In addition the Legislative Assembly shall, at the first regular session after each federal decennial census, proceed to apportion the balance of the members of the House of Representatives to be elected from the several senatorial districts, within the limits prescribed by this Constitution, *according to the population of the several senatorial districts.*" (Emphasis supplied.)

How the language "according to the population of the several senatorial districts" leaves room for a judicial interpretation, I cannot understand. The clear meaning of the language used is that the balance of fifty-four representatives shall be apportioned among the senatorial districts "according to the population of the several senatorial districts," regardless of whether the senatorial district is composed of one, or more than one, county. I realize that to give this provision a literal interpretation will lead to ridiculous results, but Section 35 itself is ridiculous. I do not believe this court should say that black means white or that up means down, even if by so doing we should make an absurd provision of the Constitution a little less preposterous.