[Sac. No. 7455. In Bank. Aug. 20, 1963.]

SAMUEL WILLIAM YORTY et al., Petitioners, v. GLENN M. ANDERSON, as Lieutenant Governor, et al., Respondents.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, for Petitioners.

Stanley Mosk, Attorney General, Charles E. Corker and Charles A. Barrett, Assistant Attorneys General, and Sanford N. Gruskin, Deputy Attorney General, for Respondents.

A. C. Morrison, J. Gould, Alan W. Strong, Edward F. Nowak and Herman F. Selvin as Amici Curiae on behalf of Respondents.

GIBSON, C. J.—Petitioners, who are taxpayers and qualified voters residing in Los Angeles County, commenced this original proceeding in mandamus to compel respondents to convene as the members of the Reapportionment Commission and reapportion the state senatorial districts. Relying upon cases in other jurisdictions stemming from the recent decision of the United States Supreme Court in *Baker* v. *Carr,* 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663], they assert that section 6 of article IV of the California Constitution, insofar as it relates to apportionment of senatorial districts, invidiously discriminates against voters living in heavily populated counties and violates the equal protection clause of the federal Constitution. We have concluded that, whether or not section 6 is invalid, respondents do not have power to reapportion the districts at the present time.

From 1879 to 1926 section 6 provided for the apportionment of both senatorial and assembly districts on the basis of population, and there was no provision for a reapportionment commission. In 1926 the section was amended by an initiative measure and now reads as follows:

"For the purpose of choosing Members of the Legislature, the State shall be divided into 40 senatorial and 80 assembly districts. . . . Such districts shall be composed of contiguous territory, and assembly districts shall be as nearly equal in population as may be. Each senatorial district shall choose one Senator and each assembly district shall choose one Member of Assembly. . . . In the formation of assembly districts no county, or city and county, shall be divided, unless it contains sufficient population within itself to form two or more districts, and in the formation of senatorial districts no county, or city and county, shall be divided, nor shall a part of any county, or of any city and county, be united with any other county, or city and county, in forming any assembly or

senatorial district. The census taken under the direction of the Congress of the United States in the year 1920, and every 10 years thereafter, shall be the basis of fixing and adjusting the legislative districts; and the Legislature shall, at its first regular session following the adoption of this section and thereafter at the first regular session following each decennial federal census, adjust such districts, and reapportion the representation so as to preserve the assembly districts as nearly equal in population as may be; but in the formation of senatorial districts no county or city and county shall contain more than one senatorial district, and the counties of small population shall be grouped in districts of not to exceed three counties in any one senatorial district; *provided, however, that should the Legislature at the first regular session following the adoption of this section or at the first regular session following any decennial federal census fail to reapportion the assembly and senatorial districts, a Reapportionment Commission, which is hereby created, consisting of the Lieutenant Governor, who shall be chairman, and the Attorney General, State Controller, Secretary of State and State Superintendent of Public Instruction, shall forthwith apportion such districts in accordance with the provisions of this section* and such apportionment of said districts shall be immediately effective the same as if the act of said Reapportionment Commission were an act of the Legislature, subject, however, to the same provisions of referendum as apply to the acts of the Legislature. . . . Until such districting as herein provided for shall be made, Senators and Assemblymen shall be elected by the districts according to the apportionment now provided for by law.'' (Italics added.)[1]

In 1928 a statute apportioning senatorial districts in accordance with the new system was approved by the voters on referendum. (Stats. 1927, ch. 856, p. 1757; Stats. 1929, p. xciii.) In the year following each decennial census, including 1961, the Legislature has reapportioned the senatorial districts, and at present there are 27 one-county districts, 8 two-county districts, and 5 three-county districts. (Elec. Code, § 30100; former § 480 of the Gov. Code; former Pol. Code, § 78 (reenacted as § 80 in 1941).)

The portions of section 6 which petitioners assert to be invalid are those which read: ''[I]n the formation of sena-

---

[1]The only change made in the provision after 1926 occurred in 1942, when the State Controller was substituted for the Surveyor General as a member of the Reapportionment Commission.

torial districts no county, or city and county, shall be divided
. . . ; but in the formation of senatorial districts no county or
city and county shall contain more than one senatorial district,
and the counties of small population shall be grouped in dis-
tricts of not to exceed three counties in any one senatorial
district. . . .'' In seeking relief against the members of the
Reapportionment Commission petitioners contend that these
provisions may be severed from the remainder of section 6
and that after such severance the language providing for the
existence and functions of the commission will remain in effect
and the commission will have the duty to reapportion sena-
torial districts in a manner conforming with the standards
which were prescribed by the section prior to the 1926
amendment.[2]

Under section 6 of article IV the power of the commission
to act is expressly conditioned upon the failure of the
Legislature to reapportion the assembly and senatorial dis-
tricts at the first regular session following each decennial fed-
eral census. The reapportionment of the senatorial districts
made by the Legislature in 1961 occurred at the first regular
session after the 1960 federal census. (Stats. 1961, chs. 23,
1235, pp. 879-880, 2983.) If, on the one hand, this reappor-
tionment is valid, the commission of course has no present
power to act with respect to senatorial districts. On the other
hand, if we assume, as petitioners assert and as indeed they
must establish in order to prevail in this proceeding, that the
portion of section 6 complained of here is both invalid and
severable from the provision relating to the commission, the
Legislature nevertheless has acted to reapportion the senatorial
districts and the requisite condition to exercise of the com-
mission's power has thus not been satisfied.

Section 6 without doubt vests in the Legislature, not the
commission, the primary duty and power to reapportion, and
the obvious purpose of the provision establishing the commis-
sion is to provide an alternative method of reapportionment
to be used only in the event of legislative inaction. Here the
Legislature did not fail to act; to the contrary, it enacted a
complete reapportionment plan, and, in the event that this plan
is held invalid by judicial decision, the Legislature, under a
reasonable construction of section 6, is entitled to an oppor-

---

[2]Petitioners urge as an alternative solution that, if the standards which
were prescribed by section 6 prior to 1926 are not controlling, the writ
should direct reapportionment according to the valid portions of section
6 and in accord with the federal Constitution.

tunity to adopt a plan that will meet the requirements of the federal Constitution. Although there are broad statements in old cases to the effect that an unconstitutional statute is not a law, confers no rights, and is as inoperative as though it had never been passed (*Norton* v. *Shelby County*, 118 U.S. 425, 442 [6 S.Ct. 1121, 30 L.Ed. 178, 186]; *Brandenstein* v. *Hoke*, 101 Cal. 131, 134-135 [35 P. 562]), unqualified statements of this type have been criticized in later decisions (see, e.g., *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U.S. 371, 374 [60 S.Ct. 317, 84 L.Ed. 329, 332]; 3 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 1820-1821) and they are not meaningful where, as here, the question before the court is purely one regarding the proper construction of the terms of a provision of law.

Our conclusion that the commission has no present power to act is in accord with an opinion of the Legislative Counsel relating to the analogous situation which would arise if a reapportionment by the Legislature of assembly districts were nullified on referendum. (Legislative Counsel's Opinion No. 5463, Dec. 12, 1960, as reported in Assembly Interim Com. Rep. 1959-1961, vol. 7, No. 5, pp. 100-101.) In concluding that a new reapportionment by the Legislature would be proper under section 6, the Legislative Counsel stated with respect to the power of the commission: ''The apparent purpose of the Provision [relating to the duties of the commission] is to prevent the Legislature from failing to act to redistrict the State as soon as possible after each Federal census. It is clear that if the Legislature had failed to enact a statute establishing new assembly districts at this session, the Reapportionment Commission would be required to act. The Legislature having acted, however, it is our opinion that the Reapportionment Commission is neither required nor authorized to take any action. . . .''

█ The views expressed herein are not inconsistent with the position taken by this court in *Dowell* v. *McLees*, 199 Cal. 144, 146 [248 P. 511], and *Wheeler* v. *Herbert*, 152 Cal. 224, 237 [92 P. 353], that the power to form legislative districts under section 6 (as it read prior to the 1926 amendment) could be exercised but once during the period between one federal census and the succeeding one. It is apparent that the statements in the opinions related to the effect of a *valid* reapportionment, not one which is inoperative because of a violation of the Constitution, and there is nothing in those decisions which would preclude the Legislature from mak-

ing a second reapportionment after nullification of its first effort by the courts or by referendum.

Since the commission for the reasons discussed above has no present power to reapportion, we do not reach the point urged by respondents that the commission also lacks power upon the ground that the provision in section 6 of article IV setting forth its duties is not severable from the portion of the section which petitioners claim to be invalid.

The fact that this proceeding may not be maintained against the commission does not mean that petitioners are without a remedy to test the validity of the provisions for senatorial reapportionment set forth in section 6. The Secretary of State is the chief officer having statewide functions with respect to the election of state senators.[3] In an appropriate proceeding against this officer such as mandamus (cf. *McFadden* v. *Jordan*, 32 Cal.2d 330, 334 [196 P.2d 787]; *French* v. *Jordan*, 28 Cal.2d 765, 767 [172 P.2d 46]; *Gage* v. *Jordan*, 23 Cal.2d 794, 800 [147 P.2d 387]) or declaratory relief (cf. *California Physicians' Service* v. *Garrison*, 28 Cal.2d 790, 800 [172 P.2d 4, 167 A.L.R. 306]; *Lord* v. *Garland*, 27 Cal.2d 840, 852 [168 P.2d 5]) petitioners could obtain a determination as to the validity of section 6 and the statutes adopted pursuant to it. (For similar proceedings entertained by courts of other jurisdictions with respect to the constitutionality of legislative apportionment see *Baker* v. *Carr*, 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663], subsequent opinion, 206 F.Supp. 341; *Moss* v. *Burkhart* (W.D. Okla.) 207 F.Supp. 885, additional opinion filed July 17, 1963, 220 F.Supp. 149; *Mann* v. *Davis* (E.D. Va.) 213 F.Supp. 577; *Thigpen* v. *Meyers* (W.D. Wash.) 211 F.Supp. 826; *W.M.C.A., Inc.* v. *Simon* (S.D. N.Y.) 208 F.Supp. 368; *Maryland Committee for Fair Representation* v. *Tawes* 229 Md. 406 [184 A.2d 715]; *Scholle* v. *Hare*, 367 Mich. 176 [116 N.W.2d 350]; *Jackman*

---

[3]The Secretary of State has the duties, for example, of notifying county clerks of the offices for which candidates are to be nominated at primary elections (Elec. Code, § 6462), receiving declarations of candidacy and sponsor certificates (Elec. Code, §§ 6519, 6521, 6550, subd. (a)), receiving fees for filing declarations of candidacy (Elec. Code, § 6552, subd. (c)), transmitting to county clerks a certified list of candidates who are eligible to be voted for at primary elections (Elec. Code, § 6580), issuing certificates of nomination to candidates nominated and giving county clerks the names of such candidates prior to the general election (Elec. Code, §§ 6619, 6620), receiving from county clerks the results of votes cast and preparing and filing a statement of vote (Elec. Code, §§ 18754, 18756), and transmitting certificates of election to each person elected (Elec. Code, § 18757).

v. *Bodine*, 78 N.J. Super. 414 [188 A.2d 642] ; *State* ex rel. *Lein* v. *Sathre* (N.D.) 113 N.W.2d 679; *Sweeney* v. *Notte*, — R.I. —— [183 A.2d 296].)

It may be noted that an action is pending in the federal District Court for the Southern District of California in which the plaintiff seeks declaratory and injunctive relief against the Secretary of State and other officers, contending that section 6, as amended in 1926, denies equal protection of the law under the federal Constitution insofar as concerns the election of members of the State Senate. (*Silver* v. *Jordan*, D.C.S.D. Cal., Civil Action No. 62-953-MC.)

The alternative writ is discharged, and the petition for a peremptory writ is denied.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Petitioners' application for a rehearing was denied September 18, 1963.