**Oscar H. MAUZY, Relator,**

v.

**The LEGISLATIVE REDISTRICTING BOARD et al., Respondents.**

**No. B–2955.**

Supreme Court of Texas.

Sept. 27, 1971.

Tony Korioth, Austin, for relator.

Crawford Martin, Atty. Gen., Pat Bailey, Asst. Atty. Gen., Austin, for respondent.

Mitchell, Gilbert & McLean, Arthur Mitchell, Fred Head, Austin, for intervenor.

CALVERT, Chief Justice.

Sec. 28, Art. III, Constitution of Texas, Vernon's Ann.St. provides:

"Sec. 28. The Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts, agreeable to the provisions of Sections 25, 26, and 26–a of this Article. In the event the Legislature shall at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas, which is hereby created, and shall be composed of five (5) members, as follows: The Lieutenant Governor, the Speaker of the House of Representatives, the Attorney General, the Comptroller of Public Accounts and the Commissioner of the General Land Office, a majority of whom shall constitute a quorum. Said Board shall assemble in the City of Austin within ninety (90) days after the final adjournment of such regular session. The Board shall, within sixty (60) days after assembling, apportion the state into senatorial and representative districts, or into senatorial or representative districts, as the failure of action of such Legislature may make necessary. * * * The Supreme Court of Texas shall have jurisdiction to compel such Commission to perform its duties in accordance with the provisions of this section by writ of mandamus or other extraordinary writs conformable to the usages of law. * * *"

The section in its present form was adopted as an amendment to the constitution in 1948.

The regular session of the 62nd Legislature, which convened January 12, 1971 and adjourned May 31, 1971, enacted a statute, ch. 981, p. 2974 (art. 195a–3, §§ 1–5, Vernon's Ann.Civ.St.), apportioning the state into representative districts, but it failed to enact a statute apportioning the state into senatorial districts. The officials constituting the Legislative Redistricting Board as provided in the constitution met formally for the first time on August 24, 1971 for the announced purpose of apportioning the state into senatorial districts.

On August 10, 1971, the District Court for the 53rd Judicial District, Travis County, declared the representative district apportionment act invalid, and a direct appeal was taken to this court. On September 16 we affirmed the trial court's judgment. See Smith, et al. v. Craddick et al., 471 S. W.2d 375 (Tex.Sup.1971).

Following our action in Smith v. Chaddick, relator, Honorable Oscar H. Mauzy, through counsel, petitioned the Legislative Redistricting Board to proceed to apportion the state into representative as well as senatorial districts. The Board declined, stating in a formal resolution as its reason for so doing that it was the Board's official position that it had no jurisdiction to apportion for representative districts inasmuch as the Legislature had enacted a statute apportioning for such districts, and the invalidation of the statute by judicial action did not serve to confer jurisdiction on the Board. As a consequence of that action, relator instituted this direct proceeding in this court seeking, primarily, a writ of mandamus to compel the Board to redistrict for representative districts.

On September 17 we authorized intervention in the proceeding by Honorable Fred Head, a member of the House of Representatives, who had been asserting in a suit in the trial court, and wished to assert here, that the 1970 decennial census had not been "published" before the regular session of the 62nd Legislature convened;

that the regular session of the 63rd Legislature which convenes the second Tuesday in January, 1973, will, therefore, be the "first regular session" *after* [1] publication of the census, and only it has jurisdiction under the constitution to redistrict; that since the regular session of the 62nd Legislature had no jurisdiction to redistrict, the Board has none.

The contention of intervenor should be considered first; if it is sound, all other issues in the case are moot and immaterial. However, we do not think the contention is sound.

█ Admittedly, the language of the opening sentence of Sec. 28, Art. III, quoted above, *is subject to the interpretation* intervenor places upon it; but when we consider the object and purpose of Sec. 28, in the light of its history, we do not think the interpretation is a reasonable one. That object and purpose obviously was to get on with the job of legislative redistricting which had been neglected or purposely avoided for more than twenty-five years. Intervenor's interpretation would require interpolation of the word "convened" into the constitutional provision and he would thus interpret it as saying that the Legislature shall apportion into districts "at its first regular session [convened] after publication of each United States decennial census. * * *" The law permits the interpolation of words into a constitutional or statutory provision when necessary to achieve clear intent, Sweeny Hospital District v. Carr, 378 S.W.2d 40, at 47 (Tex. Sup.1964); Halbert v. San Saba Springs Land & Live-Stock Ass'n, 89 Tex. 230, 34 S.W. 639, 49 L.R.A. 193 (1896); but interpolation should not be resorted to when to permit it will defeat overriding intent.

█ We are convinced that the overriding intent of the people in adopting Sec. 28 was to permit apportionment of the state into legislative districts at the regular session of the Legislature which is convened in January following the taking of the census, if publication is either before convening or during the session. We recognize that this interpretation can mean that on some occasions the Legislature may have only a few weeks, or even only a few days, in which to put the finishing touches on a redistricting bill, with jurisdiction in the Board to complete the task in the event of legislative failure; but the other side of the coin can be a two year delay in making legislative redistricting effective if redistricting legislation must be postponed until a second regular session when census publication occurs a few days or a few weeks after convening of the first regular session. Having concluded that intervenor is wrong in his basic position, we find it unnecessary to decide when "publication" of the 1970 census actually occurred, although we note in passing that intervenor's counsel stated in oral argument that by February 18, 1971, the Legislature had been furnished all census figures necessary to apportion the state into legislative districts.

█ The next issue which commands our attention is whether enactment of the invalid statute attempting apportionment of the state into representative districts robs the Board of jurisdiction to apportion the state into such districts. We hold that it does not.

█ In support of its position that it does, the Board cites, particularly, State ex rel. Lein v. Sathre, 113 N.W.2d 679 (N.D. Sup.1962) and Yorty v. Anderson, 60 Cal. 2d 312, 33 Cal.Rptr. 97, 384 P.2d 417 (1963). Decisions of courts of other jurisdictions, even if based upon identical facts, are no more than persuasive, and they are persuasive only to the extent that their reasoning is regarded as logical. State v. Sathre is obviously inapposite. It appears from the opinion in the case that North Dakota, like Texas, has provided in its constitution for a board or commission to apportion the state into legislative districts if the legislature fails to do so at its first regular session after each decennial census. The board is required to make its apportionment within ninety days after adjourn-

---

1. Emphasis ours throughout unless otherwise indicated.

ment of the legislative session. The legislature failed to apportion and the board proceeded to perform its duty. The supreme court declared the apportionment invalid, and, in response to an argument that the ninety day period having expired and there was no agency having authority to apportion further, the court held that the legislature had continuing authority to apportion into legislative districts. That is not our question.

The decision of the Supreme Court of California in Yorty v. Anderson is based upon a state of facts more nearly like the facts in this case. At the time of the *Yorty* decision, Sec. 6 of Art. IV of the California Constitution provided that the legislature should, at its first regular session following each decennial census, reapportion the state into legislative districts on the basis of equal population, but that in the formation of senatorial districts no county, or city and county, should contain more than one senatorial district. Provision was made for reapportionment by a Reapportionment Commission if the legislature should "fail to reapportion the assembly and senatorial districts." Although the legislature had enacted a legislative apportionment law, suit was filed to compel the commission to reapportion senatorial districts on the theory that the constitutional provision limiting any one county to one senatorial district violated the Equal Protection Clause of the federal constitution. The court held that the commission had no authority to act, even if the provision of Sec. 6 and the legislative enactment were invalid, because the legislature had "acted," whether validly or invalidly.

 The Texas constitutional provision differs from the California constitutional provision in that the Texas Legislature is directed to "apportion the state" into legislative districts "agreeable to the provisions of Sections 25, 26, and 26a of this Article [Art. III]." The Board is created to make apportionment in the event the Legislature shall "fail to make *such* apportionment." Finally, the Board is directed to apportion the state into such leg-

islative districts "as the failure of action of such Legislature may make necessary." Now, obviously, when all of the quoted provisions are harmonized, the failure to make "such apportionment" referred to in the second quoted provision, and the "failure of action" referred to in the third quoted provision, relate back to the requirement that the apportionment by the Legislature be "agreeable to Sections 25, 26, and 26a" of Art. III. It was precisely because the apportionment act of the 62nd Legislature was not agreeable to Sec. 26 that it was invalidated by this court in Smith v. Chaddick, supra. We hold that upon the failure of the Legislature to apportion representative districts agreeable to Sec. 26 of Art. III of the constitution, the duty to apportion for such districts devolved upon the Board.

We could rest our decision of the question last discussed on the very narrow ground just stated. We deliberately do not do so, however, preferring to write with broader sweep. We do not agree with the California court's conclusion that the Board's jurisdiction is conditioned upon the Legislature's "failure to act." That is not what our constitution says as we read it. By the constitution the Board's jurisdiction to apportion is conditioned upon the Legislature's failure "to make such apportionment." An apportionment which is invalid, for whatever reason, is no apportionment; and the Board's duty to proceed with apportioning the state into representative districts accrued when the regular session adjourned on May 31, 1971 without having enacted a valid apportionment statute.

Inasmuch as we have held that the Board must apportion, we do not have before us and may not decide whether a special session of the Legislature could apportion if the power did not reside in the Board or if the Board's own scheme were declared invalid.

 The regular session of the 62nd Legislature amended Art. 29d, Vernon's Texas Civil Statutes, to read, in part:

"Section 1. Neither the state nor any political subdivision or agency thereof

except the Legislature shall ever officially recognize or act upon any report or publication, in whatever form, of any Federal Decennial Census, either as a whole or as to any part thereof, before the first day of September of the year immediately following the calendar year during which such census was taken."

If this statute was intended to prevent action by the Legislative Redistricting Board before September first of the year referred to on the basis of census figures theretofore published, it is ineffective in so far as it conflicts with Sec. 28, Art. III of the constitution as we have interpreted it.

█ Relator requests that we direct the Board to apportion only into single-member districts as opposed to multi-member districts. We deny the request. Within certain constitutional limitations, apportionment involves the judgment and discretion of the Board. It is well settled that mandamus never lies to control official discretion of a state board. Industrial Accident Board v. Glenn, 144 Tex. 378, 190 S.W.2d 805 (1945); McDowell v. Hightower, 111 Tex. 585, 242 S.W. 753, at 754 (1922); Matthaei v. Clark, 110 Tex. 114, 216 S.W. 856, at 862 (1919). The manner in which the Board apportions the state into new districts is entirely within the judgment and discretion of the Board, so long as it acts within the limitations imposed by the Constitutions of the State of Texas and of the United States. The applicable state and federal constitutional guidelines are discussed in this court's opinion in Smith v. Chaddick, supra. It is unnecessary to repeat them here. In holding that "a county may be divided if to do so is necessary in order to comply with the equal population requirement of the Fourteenth Amendment," we stated in *Chaddick* that this court was not to be understood as proscribing multi-member districts within a single county in the absence of some discriminatory effect.

In exercising its discretion as to whether to create multi-member districts within a single county, we must assume that the Board will give careful consideration to the question of whether or not the creation of any particular multi-member district would result in discrimination by minimizing the voting strength of any political or racial elements of the voting population. See Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, at 1869, 29 L.Ed.2d 363 (1971).

██ One other matter deserves brief attention. Relator has requested this court to (1) "issue a declaratory judgment declaring the 1967 apportionment along with its amendments of 1969 of the Texas House of Representatives unconstitutional"; (2) "enjoin the election officials of the State of Texas from holding any elections under any apportionment scheme" until this court "has passed upon the constitutionality of said scheme"; and (3) "maintain jurisdiction of the parties on [sic] the subject matter of this case until the final determination can be made as to the constitutionality of any apportionment scheme promulgated." Relator asserts that jurisdiction to grant the relief sought is found in that provision of Sec. 28, Art. III authorizing the court to compel the Board to perform its duties "by writ of mandamus *or other extraordinary writs* conformable to the usages of law. * * *" Relator reads too much into the phrase "or other extraordinary writs." It seems far more reasonable and logical to hold that the phrase refers to writs of procedendo, certiorari, prohibition, quo warranto, and other such common law writs rather than that we should enter upon such innovative courses of procedure as those suggested. We do so hold.

A writ of mandamus will issue to the Legislative Redistricting Board of Texas as sought. No motion for rehearing will be entertained.

DANIEL, J., not participating.