2005 SD 84

**Alfred BONE SHIRT, Belva Black Lance, Bonnie High Bull and Germaine Moves Camp, Respondents,**

**v.**

**Joyce HAZELTINE, in her official capacity as Secretary of the State of South Dakota, Scott Eccarius, in his official capacity as Speaker of the South Dakota House of Representatives, South Dakota House of Representatives, Arnold Brown, in his official capacity as President of the South Dakota Senate, and South Dakota Senate, Petitioners.**

No. 23507.

Supreme Court of South Dakota.

Argued March 21, 2005.

Decided June 29, 2005.

Patrick Duffy of Duffy & Duffy, Rapid City, South Dakota, Bryan L. Sells of American Civil Liberties Union Foundation, Atlanta, Georgia, Attorneys for respondents.

Lawrence E. Long, Attorney General, John P. Guhin, Sherri Sundem Wald, Assistant Attorneys General, Pierre, South Dakota, Attorneys for petitioners.

GILBERTSON, Chief Justice and SABERS, Justice.

■ [¶ 1.] Pursuant to SDCL 15–24A–1 [1] United States District Judge Karen E. court, if there are questions of law of this state involved in any proceeding before the certifying court which may be determinative of the cause pending in the certifying court

---

1. The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States, or a United States district

Schreier of the District of South Dakota certified the following question to this Court:

Is the South Dakota Legislature authorized under Article III, Section 5 of the South Dakota Constitution, to reapportion Districts 26 and 27 and other affected areas in response to the federal district court finding a violation of Section 2 of the Voting Rights Act of 1965?

We answer the question in the affirmative.

## FACTS

[¶ 2.] Article III, Section 5 of the South Dakota Constitution mandates that the Legislature apportion its membership every ten years after 1991. Pursuant to this provision the Legislature undertook the redistricting process following the 2000 census. Following redistricting committee hearings, the Legislature at a special session adopted the 2001 plan which the governor signed on November 1, 2001. *Bone Shirt v. Hazeltine*, 336 F.Supp.2d 976, 983 (D.S.D.2004).

[¶ 3.] Two Native American residents of Todd County in District 27 and two Native American residents in Bennett and Jackson Counties in District 26 brought suit in the United States District Court against the South Dakota Secretary of State, the Speaker of the House of Representatives, the President of the Senate, and the two houses of the South Dakota Legislature. The plaintiffs in the district court alleged that South Dakota's 2001 legislative redistricting plan violated their rights under Sections 2 and 5 of the Voting Rights Act of 1965. *Bone Shirt*, 336 F.Supp.2d at 980.

[¶ 4.] A three judge panel held that defendants violated Section 5 by failing to preclear the 2001 legislative redistricting plan. *Id.* 336 F.Supp.2d at 980. Following a court trial, the United States District Court further held

[T]hat under the totality of the circumstances, the South Dakota 2001 Plan results in unequal electoral opportunity for Indian voters. The court finds that plaintiffs have satisfied three *Gingles* factors and that the totality of the circumstances evidence that Indians in Districts 26 and 27 have been denied an equal opportunity to access the political process. The current legislative Plan impermissibly dilutes the Indian vote and violates § 2 of the Voting Rights Act. Defendants must afford Indians in both Districts 26 and 27 a realistic and fair opportunity to elect their preferred candidates.

*Id.* 336 F.Supp.2d at 1052. The district court pointed out that state government should ordinarily have the opportunity to propose a remedy for a § 2 violation since "redistricting remains primarily in the domain of the states." *Id.* 336 F.Supp.2d at 1053. Defendants were given forty-five days to file remedial proposals. *Id.* 336 F.Supp.2d at 1053.

[¶ 5.] In light of our decision in *Emery v. Hunt*, 2000 SD 97, 615 N.W.2d 590, a question arose as to whether the Legislature could constitutionally engage in legislative apportionment in a year other than a year after a decennial census. Because of his concern about the State's ability to comply with the district court's order to make remedial proposals while also complying with the constitutional mandate regarding legislative apportionment, Governor M. Michael Rounds requested an advisory opinion from this Court. We declined to answer this request because:

ling precedent in the decisions of the Supreme Court of this state.

and it appears to the certifying court and to the Supreme Court that there is no control-

The Justices cannot render an advisory opinion on issues which may arise in the federal litigation. That would involve the Justices [ ] determining issues based on conditions that may or may not take place and which are outside the process of adjudication without giving the parties an opportunity to brief the issues and advocate a position.

Letter from Chief Justice David Gilbertson to Governor M. Michael Rounds, October 5, 2004.

[¶ 6.] The state defendants then asked the district court to certify the question to this Court. The district court did so, noting:

> Certification is within the federal court's discretion. *Perkins v. Clark Equipment Co.*, 823 F.2d 207, 209 (8thCir.1987). Certification is "appropriate when the state court's construction of an uncertain state law could make resolution of federal constitutional questions unnecessary." *Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1463 (8thCir.1995). The South Dakota Supreme Court may answer questions of law certified to it "which may be determinative of the cause pending in the certifying court and[when] it appears ... that there is no controlling precedent in the decisions of the Supreme Court of [South Dakota]." SDCL 15-24A-1.

In the instant case, this court found that the state legislative districting plan of 2001 violates the Voting Rights Act of 1965 because minority voting rights are diluted. This court ordered defendants to file remedial proposals consistent with the opinion within 45 days. " 'When a federal court declares an existing apportionment scheme unconstitutional, it is therefore appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan.' " *Williams v. City of Texarkana, Ark.*, 32 F.3d 1265, 1268 (8thCir1994)(quoting *Wise v. Lipscomb*, 437 U.S. 535, 540, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411 (1978)). The court must defer to a proposed plan adopted by the legislature, "unless the plan does not completely remedy the violation or the proposed plan itself constitutes a section two violation." *Williams*, 32 F.3d at 1268. The district court must fashion a remedial plan if the state legislature does not propose a remedy. *Id.*

The Supreme Court of South Dakota has previously ruled that the plain language of Article III, Section 5, authorizes apportionment by the legislature only after a decennial census. *In re Certification of a Question of Law*, 615 N.W.2d 590 (S.D.2000) *(Emery v. Hunt)*. The South Dakota Supreme Court has not had the opportunity, however, to address the question of whether the state legislature has the power under the South Dakota state constitution to reapportion after its 2001 decennial apportionment was found to violate federal law. If the state legislature has the power to reapportion and enacts a plan that completely remedies the violation without creating a new section two violation, such action may resolve the case pending before this court. Under these circumstances, the court finds it appropriate to certify a question of law to the South Dakota Supreme Court. The question proposed by defendants will be broadened, however, to include "other affected areas" in addition to Districts 26 and 27 because plaintiffs' proposed remedial plans slightly impact adjacent legislative districts.

## ISSUE

[¶ 7.] This Court filed an order accepting certification on January 20, 2005. Consequently this issue is properly before this Court:

Is the South Dakota Legislature authorized under Article III, Section 5 of the South Dakota Constitution, to reapportion Districts 26 and 27 and other affected areas in response to the federal district court finding a violation of Section 2 of the Voting Rights Act of 1965?

## ANALYSIS

[¶ 8.] Two South Dakota cases are relevant to deciding the issue before the Court. The first, decided in 1933, is *In re Opinion of the Judges*, 61 S.D. 107, 246 N.W. 295 (S.D.1933). The second, issued in 2000, is *Emery v. Hunt*, 2000 SD 97, 615 N.W.2d 590.

[¶ 9.] When *In re Opinion of the Judges* was before the Court, Article III, Section 5 of the South Dakota Constitution provided:

The legislature shall provide by law for the enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five and every ten years thereafter; and at its first regular session, after each enumeration and also after each enumeration made by authority of the United States, but at no other time, the legislature shall apportion the senators and representatives according to the number of inhabitants, excluding Indians not taxed and soldiers and officers of the United States army and navy. Provided, that the legislature may make an apportionment at its first session after the admission of South Dakota as a state.

The Twenty–Second Legislature which met in 1931 failed to comply with the mandate of § 5 and did not make the required apportionment. The question be-

came whether the Twenty–Third Legislature meeting in 1933 had the authority to apportion or whether it was prohibited from doing so by the "but at no other time" language in Article III, Section 5.

[¶ 10.] This Court examined the constitutions of other states and found that most apportionment provisions had affirmative mandates for action at a specified time but, unlike South Dakota, no express prohibition of action at other times. Despite this, courts held "an affirmative mandate for legislative action at a specified time is an implied prohibition of action at any other time." *In re Opinion of the Judges*, 61 S.D. at 111, 246 N.W. at 296. This Court found that no valid distinction could be based upon the South Dakota constitution's express, rather than implied prohibition:

* * *

In all cases which we have been able to find upon the point where the Constitution affirmatively requires apportionment at a specific time (usually the first session after enumeration), it is held that such duty is mandatory upon the Legislature (though they are not compellable thereto by any court), and, notwithstanding the fact that there is an implied prohibition against so doing at any other time, *such prohibition is conditioned upon the prior performance of the affirmative duty and does not come into operation until the duty mandatorily imposed has been exercised.* In other words, when a Legislature once makes an apportionment following an enumeration no Legislature can make another until after the next enumeration, but the duty to make the apportionment following the enumeration continues until performed even though the Legislature fails to perform such duty at the first session after the enumeration.

*In re Opinion of the Judges,* 61 S.D. at 111–112, 246 N.W. at 296–297. (emphasis added).

[¶ 11.] The Court also observed:

It seems quite apparent that the framers of the Constitution in providing for apportionment "at its first regular session, after each enumeration ... but at no other time," meant to say only this and nothing more: That the Legislature should make an apportionment at the first session after an enumeration as affirmatively required by the Constitution, and having so done (as the Constitution makers assumed they would) they should not again exercise such power until after another enumeration.

The Court stressed, however, that the failure to perform the duty cannot cancel the legislative obligation:

"... that is to say, if the apportionment is not made in the first session after the return of the enumeration, the duty to make it devolves upon the Legislature then next sitting and upon each following Legislature until that duty is performed...." *Botti v. McGovern* (1922) 97 N.J.L. 353, 118 A. 107, 108.

"The duty is a continuing one, and, if it is not discharged at or within the time prescribed, the burden of its performance rests upon successive General Assemblies until the section has been obeyed." *Fergus v. Kinney* (1928) 333 Ill. 437, 164 N.E. 665, 666.

*Id.,* 61 S.D. at 113, 246 N.W. at 297.

[¶ 12.] Therefore the Court held that if the 1933 legislature passed an apportionment act, that act "will not in our opinion be open to successful attack upon the ground that the present session lacked constitutional power to deal with the subject matter of apportionment under section 5 of Article 3 of the Constitution of this state." *Id.* 61 S.D. at 114, 246 N.W. at 297.[2]

[¶ 13.] Since our 1933 decision in *In re Opinion of the Judges,* Article III, Section 5 has been amended three times.[3] The

2. The opinion also suggested that the legislature's duty to apportion includes the duty to apportion validly. When the Seventh Legislature failed to apportion, the Eighth Legislature assumed the duty, and passed an apportionment measure, "the validity of which appears never to have been challenged[.]" *Id.* 61 S.D. at 114, 246 N.W. at 297.

The Court was also asked if an apportionment act passed by the 1933 legislature would be a "valid" legislative apportionment. *Id.* at 61 S.D. at 114, 246 N.W. at 297. The Court declined to pass on the constitutionality and validity of a legislative act, the form and contents of which were entirely unknown. *Id.* 61 S.D. at 114, 246 N.W. at 297.

3. The 1935 proposed amendment was approved in 1936. It deleted the requirement for apportionment after a federal census, deleted a provision excluding Indians not taxed from the state enumeration, and added the provision for the named state officers to make an apportionment when the legislature failed to do so. *See* 1935 SD SessL ch 136.

The 1947 proposal, approved in 1948, deleted the provision for a state census, changed the time of reapportionment to 1951 and every tenth year thereafter, adopted the federal census as the basis of reapportionment and deleted a provision excluding soldiers and officers of the United States army and navy from the basis of apportionment. *See* 1947 SD SessL ch 250. Article III, Section 5 then provided:

The Legislature shall apportion its membership in accordance with the last federal census prior to the Legislative Session at which such apportionment shall be made. Such apportionment shall be made by the regular session of the Legislature in 1951 and every ten years thereafter and at no other time. If any legislature whose duty it is to make an apportionment shall fail to make the same as herein provided that it shall be the duty of the Governor, Superintendent of Public Instruction, Presiding Judge of the Supreme Court, Attorney General and Secretary of State within thirty (30) days after the adjournment of the legislature to make such apportionment and

1982 initiated constitutional amendment repealed the existing Article III, Section 5 and replaced it with Article III, Section 5 as it reads now:

The Legislature shall apportion its membership by dividing the state into as many single-member, legislative districts as there are state senators. House districts shall be established wholly within senatorial districts and shall be either single-member or dual-member districts as the Legislature shall determine. Legislative districts shall consist of compact, contiguous territory and shall have population as nearly equal as is practicable, based on the last preceding federal census. An apportionment shall be made by the Legislature in 1983 and in 1991, and every ten years after 1991. Such apportionment shall be accomplished by December first of the year in which the apportionment is required. If any Legislature whose duty it is to make an apportionment shall fail to make the same as herein provided, it shall be the duty of the Supreme Court within ninety days to make such apportionment.

[¶ 14.] We examined this constitutional provision in *Emery v. Hunt, supra.* There, the 1991 Legislature performed its constitutional duty and enacted apportionment legislation following the 1990 census. No court found the legislation to be invalid or unconstitutional. The Legislature, however, was concerned about the constitutionality of the legislation in light of the United States Supreme Court's decision in *Miller v. Johnson,* 515 U.S. 900, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995). It amended the 1991 legislation in 1996. We were asked to determine whether the 1996 amendment violated Article III, Section 5 which mandates apportionment in 1991

and every ten years thereafter. In a divided opinion, the majority of this Court concluded that "because the legislature did perform its constitutional duty when it enacted apportionment legislation in 1991 following the 1990 federal census, it lacked constitutional authority to make another apportionment until after the next federal census." *Emery v. Hunt,* 2000 SD 97 at ¶ 8, 615 N.W.2d at 595. Justice Sabers and Justice Gilbertson dissented interpreting this constitutional provision to allow additional apportionments when the legislature deemed it appropriate.

[¶ 15.] The *Emery* Court also recognized that the 1982 amendment of Article III, Section 5 transferred the duty of apportionment, if not performed by the Legislature, to this Court. This duty:

is also mandated to be performed at a time certain. It may only be performed within ninety days after December first of 1991 and every ten years thereafter if the legislature fails to apportion its membership by the December first deadline.

*Id.,* 2000 SD 97 at ¶ 12, 615 N.W.2d at 596. After the Court has performed its constitutional duty under Article III, Section 5, the Legislature is prohibited from taking further action until after the next federal census. *Id.,* 2000 SD 97 at ¶ 15, 615 N.W.2d at 596.

[¶ 16.] The duty of the Legislature to apportion and this Court's duty when the Legislature fails to act is the duty to enact a valid apportionment law, a point suggested in *In re Opinion of the Judges, see* fn 2, *supra,* and stressed by the majority in *Emery v. Hunt:*

It is the general rule that once a valid apportionment law is enacted no future

when so made a proclamation is issued by the Governor announcing such apportionment the same shall have the same force

and effect as though made by the Legislature.

act may be passed by the legislature until after the next regular apportionment period prescribed by the Constitution.

*Emery v. Hunt*, 2000 SD 97 at ¶ 10, 615 N.W.2d at 595 (quoting *Harris v. Shanahan*, 192 Kan. 183, 387 P.2d 771, 779–80 (1963)). There is a strong presumption that laws enacted by the legislature are constitutional and valid. *Cleveland v. BDL Enterprises, Inc.*, 2003 SD 54, ¶ 34, 663 N.W.2d 212, 221.

> Since there is a presumption that laws passed by the legislature are valid and constitutional until judicially determined to be otherwise, the legislature will be powerless to lawfully reapportion until the next apportionment period, unless this court adjudges the present senate apportionment act to be invalid.

*Harris v. Shanahan*, 387 P.2d at 780. "An apportionment which is invalid, for whatever reason, is no apportionment[.]" *Mauzy v. Legislative Redistricting Board*, 471 S.W.2d 570, 574 (Tex.1971).[4]

■■■■ [¶ 17.] The foregoing authority instructs that if the legislature fails to perform its constitutional duty to enact apportionment legislation by December 1 of the year in which apportionment is required, this Court has ninety days from the December 1 deadline to apportion. However, if the legislature apportions and that apportionment is judicially deemed invalid, the legislature continues to have the duty to enact a valid apportionment plan. Where, as in *Emery v. Hunt, supra*, the legislature enacted apportionment legislation in 1991 and there had been no judicial determination of invalidity or unconstitutionality, a majority of this Court concluded the legislature had no authority to make another apportionment until after the next census. Where however, as in this case, a federal court has held that the apportionment is invalid, the legislature has the continuing obligation and duty to enact a valid plan. The duty continues until performed.[5]

---

**4.** In the Attorney General's brief we were invited to re-examine the holding in *Emery* and overrule it based upon the historical analysis of the South Dakota Constitutional Debates authored by Justice Gilbertson in his dissent in *Emery*. At oral argument, however, the Attorney General conceded that it is not necessary to overrule *Emery* in deciding this case.

Based on the narrow question certified to us by the district court, we also find it unnecessary to re-visit the holding in *Emery*. We leave that for another day. *Emery* dealt with a prior apportionment which all parties agreed was valid. Here we are answering a certified question which has as its premise the underlying apportionment to be invalid.

**5.** On November 5, 2002 the voters rejected Constitutional Amendment B, an amendment to Article III, Section 5. This amendment was titled "An amendment to Article III, Section 5 of the Constitution to clarify the responsibility of the legislature to provide for its own apportionment." This proposal would have added the following sentence to Article III, Section 5:

> However, if any federal or state court invalidates, in whole or in part, an apportionment made by the legislature, the legislature, meeting in regular or special session, shall make a new apportionment as prescribed by federal and state constitutional and statutory law or court order.

It would also have rewritten the fourth sentence of Article III, Section 5 to read:

> An apportionment shall be made by the legislature in 2001, and every ten years after 2001.

The vote was 116,495 for and 187,242 against.

In this case, "much has been made" of the failure of the 2002 amendment to Article III, Section 5. *McIntyre v. Wick*, 1996 SD 147, ¶ 19 fn. 5, 558 N.W.2d 347, 356 fn. 5. By its defeat the respondents in this case argue that the people of South Dakota made it irrefutably clear that their elected representatives in the legislature have no power to reapportion where, as in this case,

[¶ 18.] Other jurisdictions with constitutional provisions similar to Article III, Section 5 have reached the same conclusions.[6] In *Yorty v. Anderson,* 60 Cal.2d 312, 33 Cal.Rptr. 97, 384 P.2d 417 (1963) the California Supreme Court found that Article IV, Section 6 of its constitution vested the primary duty and power to apportion in the legislature. If the legislature enacted a reapportionment plan held invalid by judicial decision, the legislature, "under a reasonable construction of Section 6" had the opportunity to adopt a plan meeting the requirements of the federal constitution. *Id.,* 33 Cal.Rptr. 97, 384 P.2d at 419. The purpose of the provision in Section 6 which created a Reapportionment Commission was to "provide an alternative method of reapportionment to be used only in the event of legislative inaction." *Id.*

[¶ 19.] Article II, Section 35 of the North Dakota Constitution mandates that the legislature apportion at the first regular session after each decennial census. *State v. Sathre,* 113 N.W.2d 679 (N.D. 1962). If the legislature fails to apportion, the duty falls on a group of state officials. The Thirty–Seventh Legislature took no action. The action taken by the group designated to apportion in the event the Legislature failed to do so was held to violate the constitutional mandate of apportionment according to the population of the districts and was, therefore, void. The court explained:

> It was asserted on argument that should we hold that the action of the group was void, there could be no apportionment under Section 35 until after the next Federal Decennial Census. We do not so construe Section 35. While the power of the group to act on behalf of the Legislature expired at the end of the 90–day period, the duty imposed upon the Legislature to reapportion is a continuing one. *State v. Cunningham,* 81 Wis.

a federal district court determines that the original apportionment is unconstitutional and, therefore, invalid. Rather, the power to reapportion rests with a single federal district judge. The State, however, contends that the failed amendment was offered to clarify the responsibility of the legislature to reapportion. Therefore, the State argues that the Legislature has the authority to act regardless of the adoption of the amendment.

Where amendments are passed, it is often presumed that there was an intent to change existing law. *State v. Schroeder,* 2004 SD 21, ¶ 12, 674 N.W.2d 827, 831. "However, amendments can also clarify existing law." *Id.* While rejected constitutional amendments may be considered in determining the intent of the framers, *Poppen v. Walker,* 520 N.W.2d 238, 246 (S.D. 1994), "it is difficult, however, to draw any conclusion as to the will of the people from the failure of [this] constitutional amendment." *McIntyre v. Wick,* 1996 SD 147 at ¶ 19, fn. 5, 558 N.W.2d at 356, fn. 5. "Under our system of government, law is not made by defeating bills or proposed constitutional amendments." *State v. Public Em-*

*ployees Retirement Bd.,* 118 N.M. 507, 882 P.2d 548, 553 (N.M.Ct.App.1994). We are left with a decision by the voters which is similar to a general verdict by a jury. We know the end result but not the specifics of how the decision-makers arrived at it. A constitutional amendment or revision "must be submitted to the voters and shall become a part of the Constitution only when approved by a majority of the votes cast thereon." SDConst art XXIII § 3. Since the 1982 legislative amendment to Article III, Section 5, which passed, allows the Legislature to reapportion where a court determines its apportionment to be invalid, the failure of the proposed 2002 measure did not change that result.

6. In reviewing apportionment cases this Court considers cases from other states with similar constitutional provisions. *In re Opinion of the Judges,* 61 S.D. at 110–111, 246 N.W. at 296–297; *Emery v. Hunt,* 2000 SD 97 at ¶ 10, 615 N.W.2d at 595. With our shared heritage, North Dakota decisions shed light on our constitutional provisions. *State v. Schwartz,* 2004 SD 123, 689 N.W.2d 430. (Konenkamp, J., concurring in result).

440, 51 N.W. 724, 15 LRA 561; *Denney v. State*, 144 Ind. 503, 42 N.E. 929, 31 LRA 726; *People ex rel. Carter v. Rice*, 135 N.Y. 473, 31 N.E. 921, 16 LRA 836; *In re Opinion of the Judges*, 61 S.D. 107, 246 N.W. 295.

In *Jones v. Freeman*, 193 Okl 554, 146 P.2d 564, it is said:

> While the primary duty of apportioning the state rests upon the first Legislature elected after each Decennial Federal census, the duty is a continuing one and if the first Legislature fails to enact a valid law, the duty devolves upon each succeeding Legislature until it is performed. * * *
>
> Once a valid law is enacted no further act may be passed by the Legislature until after the next Federal Decennial census.

We are of the opinion that the duty of the Legislature to apportion is mandatory and continues until it is performed.

*Id.*, 113 N.W.2d at 687.[7]

## CONCLUSION

[¶ 20.] Article III, Section 5 of the South Dakota Constitution authorizes the South Dakota Legislature to reapportion Districts 26 and 27 and other affected areas in response to a federal district court's finding a violation of Section 2 of the Voting Rights Act of 1965.

[¶ 21.] ZINTER and MEIERHENRY, Justices, concur.

[¶ 22.] KONENKAMP, Justice, concurs specially.

KONENKAMP, Justice (concurring specially).

[¶ 23.] Five years ago, we held that the Legislature could not, on its own initiative, reapportion legislative districts other than at the times permitted by the South Dakota Constitution. *Emery v. Hunt*, 2000 SD 97, 615 N.W.2d 590. Like the case before us today, *Emery* answered a certified question put to us by the federal district court. We ruled that in enacting its 1996 redistricting plan "the Legislature acted beyond its constitutional limits." *Id.* at ¶ 18, 615 N.W.2d at 597. We voided the 1996 plan, thus reinstating the preexisting 1991 plan.

[¶ 24.] Despite the decennial redistricting limitation in South Dakota's Constitution, the co-authors of today's lead opinion would permit the Legislature to reapportion voting districts at any time the Legislature deems another apportionment desirable. *See* their separate dissents in *Emery*, 2000 SD 97, ¶¶ 21–38, 615 N.W.2d at 597–604. This proposition is precisely what our ruling in *Emery* would not permit. In my view, however, our decision today does not alter our holding in *Emery*. Now the question before us is different.

---

7. *See generally King v. Rhodes*, 11 Ohio St.2d 95, 228 N.E.2d 653 (1967). Ohio's constitution places the power over legislative apportionment in an apportionment board.

> There is no question that the board has the authority to adopt the original decennial apportionment plan. It has not only the authority but the duty to do so. However, its duty is not confined to merely preparing a plan. The board's duty is to adopt a valid plan. Thus, having the authority to adopt the plan if for some reason the plan is determined to be a nullity it necessarily follows that the board has the implied duty to adopt a new plan which is valid. *State ex rel. Herbert v. Bricker, supra*, 139 Ohio St. 499, 41 N.E.2d 377.
>
> To hold otherwise would leave the state without an apportionment for legislative representation. There is no other body authorized to make such apportionment in Ohio.
>
> *Id.*, 228 N.E.2d at 658–659.

[¶ 25.] We must decide whether the Legislature may reapportion in response to a court judgment that the existing apportionment is illegal. There is ample reason to conclude that once a redistricting plan is declared unlawful or unconstitutional, the Legislature can be required to forthwith enact a new plan in compliance with the law. This is true even if the reapportionment would take place outside the ten-year cycle dictated by our Constitution.

[¶ 26.] The danger that the Legislature could reapportion every few years for partisan motives is the reason the framers of our Constitution prohibited reapportionment more frequently than every ten years. That is why the redundant "at no other time" language was inserted in the original text. The framers feared that a politically dominant party could redistrict at will to suit its own self-serving ends. South Dakota Constitutional Convention Debates of 1885, vol 1, at 207. For similar reasons, most states operate on this same ten-year timetable. The United States Supreme Court has acknowledged that "[l]imitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system...." *Reynolds v. Sims,* 377 U.S. 533, 583, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506 (1964).

[¶ 27.] On the other hand, once it is determined by a court that a legislative redistricting plan is invalid, equal protection demands a remedy. The preferred forum for a solution is usually the state. "[T]he Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts." *Growe v. Emison,* 507 U.S. 25, 34, 113 S.Ct. 1075, 1081, 122 L.Ed.2d 388 (1993) (citing US Const art I, § 2). The Supreme Court recognized that "[t]he power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged." *Scott v. Germano,* 381 U.S. 407, 409, 85 S.Ct. 1525, 1527, 14 L.Ed.2d 477 (1965) (citations omitted). Indeed, both "[r]eason and experience argue that courts empowered to invalidate an apportionment statute which transgresses constitutional mandates cannot be left without the means to order appropriate relief." *Terrazas v. Ramirez,* 829 S.W.2d 712, 718 (Tex.1991).

[¶ 28.] The fact that the voters rejected an amendment in 2002 to empower the Legislature to reapportion if a state or federal court invalidated an apportionment is of no consequence. The courts always had the power to require such a reapportionment. Therefore, I would answer the district court's question in the affirmative: the Legislature can reapportion Districts 26 and 27 under Article III, Section 5 of the South Dakota Constitution, but only because there is a court judgment finding the existing apportionment invalid.